616 So.2d 446 (1993)
Andrew CASH, Petitioner,
v.
UNIVERSAL RIVET, INC., and Nationwide Mutual Insurance Co., Respondents.
No. 79896.
Supreme Court of Florida.
April 8, 1993.
Rehearing Denied June 9, 1993.
*447 Donald D. Gillis and Janet M. Greene of Underwood, Gillis & Karcher, P.A., Miami, for petitioner.
Kimberly A. Hill of Conroy, Simberg & Lewis, P.A., Hollywood, for respondents.
McDONALD, Justice.
We review Universal Rivet, Inc. v. Cash, 598 So.2d 154, 158 (Fla. 1992), in which the district court certified the following question as one of great public importance:
WAS THE FIXATION STAPLE INSERTED INTO CLAIMANT'S SHOULDER A "PROSTHETIC DEVICE," AS THAT TERM IS USED IN SECTION 440.19(1)(b), FLORIDA STATUTES (1985)?
We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We answer the question in the negative and approve the decision of the district court.
Andrew Cash suffered an on-the-job shoulder injury on February 24, 1986, while lifting a full bucket of rivets. In March 1986, the employer and carrier authorized Dr. Robert S. Ennis to perform an arthroscopic evaluation of Cash's shoulder. The examination revealed that Cash had a torn ligament in his shoulder, and Dr. Ennis performed a staple capsulorrhaphy. As a part of this procedure, Dr. Ennis inserted a long fixation staple to hold the ligament in its proper position until the normal healing process had occurred. According to Dr. Ennis' testimony, the staple is inserted through the ligament and into the bone of the anterior portion of the shoulder joint. Although the staple remains in place after the ligament has healed, it does not serve any function.
Cash received temporary total disability and temporary partial disability benefits until May 1986, at which time he returned to light duty work. When he began to experience renewed pain in his shoulder, he returned to Dr. Ennis on August 3, 1988. Dr. Ennis' associate, Dr. Dennis, examined Cash and determined that the staple appeared to be in its proper place and that the shoulder appeared normal. Dr. Dennis recommended medication and physical therapy, and Cash visited Dr. Ennis or one of his associates three additional times. On August 24, 1988, Cash filed a claim seeking further temporary total disability benefits and authorization for treatment. The employer and carrier denied the claim on the ground that, pursuant to subsection 440.19(1)(a), Florida Statutes (1985), the two-year statute of limitations had run. As an alternative argument, the employer and carrier claimed that if the staple was classified as a prosthesis under subsection 440.19(1)(b), the statute of limitations barred all *448 claims except for medical assistance with the staple.
Subsection 440.19(1)(a) provides that "[t]he right to compensation for disability, rehabilitation, impairment, or wage loss ... shall be barred unless a claim therefor ... is filed... within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment ... furnished by the employer." Subsection 440.19(1)(b) provides in pertinent part that
[a]ll rights for remedial attention ... shall be barred unless a claim therefor ... is filed ... within 2 years after the date of the last payment of compensation or ... after the date of the last remedial attention ... furnished by the employer. However, no statute of limitations shall apply to the right for remedial attention relating to the insertion or attachment of a prosthetic device to any part of the body.

(Emphasis added.)
In May 1991, the judge of compensation claims ruled that a staple was a "prosthetic device," within the meaning of that term as used in subsection 440.19(1)(b).[*] Therefore, the two-year statute of limitations did not apply to the right for remedial attention relating to the replacement or removal of the staple. The district court reversed the holding of the judge of compensation claims and concluded that the staple was not a prosthetic device. The court then certified the question at issue in this case.
The question of whether Cash should be awarded the compensation benefits he requested hinges on the definition of "prosthesis." Although chapter 440, Florida Statutes (1985), does not define "prosthesis" or "prosthetic device," the definitions of the terms in medical dictionaries are relatively consistent. Based on the collection of definitions found in medical reference books such as Blakiston's New Gould Medical Dictionary (2d ed.) and Dorland's Illustrated Medical Dictionary (27th ed.), the district court held that a "prosthetic device" referred to an "artificial substitute or replacement, whether external or implanted, for a missing or defective natural part of the body." 598 So.2d at 157. We also adopt this definition, but we add that a prosthetic device, as used in subsection 440.19(1)(b), requires a relatively permanent functional or cosmetic purpose.
Dr. Ennis described the staple inserted in Cash's shoulder as a "metal stitch." Unlike dentures, an artificial limb, or a hearing aid, the staple does not substitute for a natural part of the body. Rather, the staple is an internal fixation device that assists in the healing process and serves no purpose once the healing process is complete. Because the staple does not replace a natural body part and has only a temporary functional purpose, it does not fit within the definition of "prosthetic device." Thus, the exception to the statute of limitations for remedial attention related to a prosthesis is not applicable in the instant case.
We approve the district court's decision that the staple is not a prosthetic device and that subsection 440.19(1)(b) bars Cash's claim for workers' compensation benefits.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., dissents with an opinion, in which SHAW and KOGAN, JJ., concur.
BARKETT, Chief Justice, dissenting.
The majority has chosen a definition of prosthesis that is exceedingly narrow and at odds with the remedial nature of the workers' compensation law.
The two-year statute of limitations for compensation for normal follow-up treatment exists largely because an injury that has not needed medical attention in two *449 years is unlikely to cause any additional problems. After two years of not needing treatment, it is safe to conclude that the injury has healed and that any further complaint in fact relates to a new injury. By contrast, the prosthetic exception recognizes that an artificial device can require further treatment at any time after its insertion into the body.
Despite the majority's statement to the contrary, medical dictionaries are not "relatively consistent" in their definitions of prosthesis. Taber's Cyclopedic Medical Dictionary (16th ed. 1989) defines a prosthesis as a "[r]eplacement of a missing part by an artificial substitute, [or ... a d]evice to augment performance of a natural function." I believe the trial judge cannot be faulted for accepting this definition. In dissent, Judge Ervin at the district court observed:
[O]ne of the treatises the majority relies upon, Dorland's Illustrated Medical Dictionary 1369 (27th ed. 1988), is not necessarily supportive of a contrary view. While stating the common definition that a prosthesis is "an artificial substitute for a missing body part," it continues by listing as one of several examples therefor an ocular prosthesis, with the comment: "[A]ny other aid to vision, e.g., eyeglasses or occluders." (Emphasis added.) Although eyeglasses cannot be considered as an artificial substitute for a missing body part, they are obviously designed to augment or improve one's deficient vision. (Emphasis in original).
Universal Rivet, 598 So.2d at 159 (Ervin, J., dissenting).
The staple in question clearly was an artificial substitute for the ligament. Until the torn ligament healed, the staple augmented the function of that ligament. Despite the majority's contention, an artificial device does not lose its prosthetic nature simply because it is no longer necessary. Even the definitions relied upon by the majority do not require any permanence. By adding such a requirement by judicial fiat, the majority is not only narrowing the most narrow definition it could find, but it is also legislating.
SHAW and KOGAN, JJ., concur.
NOTES
[*] On December 3, 1990, the judge of compensation claims ordered the employer and carrier to pay the cost of a "one-time exam" by Dr. Ennis to determine whether the staple was causing Cash's continued pain. To encourage the employer and carrier to withdraw a pending request for rehearing, Cash agreed to bear the cost of the examination. On April 1, 1991, Cash filed a claim for reimbursement of the cost of the examination.