SHIVERS, Senior Judge.
Colonial Oaks Apartments, the employer, and Continental Loss Adjusting Services, the servicing agent (together, the E/SA) appeal a workers’ compensation order wherein the Judge of Compensation Claims (JCC) found that a penetrating keratoplasty or corneal graft constituted a “prosthetic device” for the purposes of section 440.19(l)(b), Florida Statutes (1990). Upon our determination that a corneal graft, as living tissue, does not meet the definition of prosthetic device established by this court[1] and adopted by the supreme court,[2] we reverse.
*447 On July 20,1990 George Hood (Hood), the Appellee, suffered a compensable injury when a projectile struck him in the left eye while he was using a “weed eater.” The E/SA authorized and provided medical treatment for Hood’s injuries on the following day. Dr. Misner, the treating physician, indicated in his office notes that Hood had sustained an abrasion to the full length of the left cornea.
Sometime thereafter, Hood relocated to Pennsylvania. When he applied for a driver’s license in that state, Hood was directed to obtain a physician’s approval concerning his ability to drive since he was experiencing blurred vision. Thus, Hood sought treatment from Dr. Moore on November 16,1990. Believing that nothing could be done for him, Hood suspended his visits to Dr. Moore in December of 1990. On March 29,1994 Hood returned to Dr. Moore to inquire about laser surgery, about which he had heard and thought might correct the blurred vision of his left eye. Dr. Moore’s office notes of that date indicate a diagnosis of a corneal scar. Considering a corneal transplant, Dr. Moore referred Hood to Dr. Martin Maesai for an evaluation.
Dr. Maesai evaluated Hood on April 18, 1994. Diagnosing a corneal scar on the left eye, Dr. Maesai recommended a penetrating keratoplasty to correct it. In a letter dated April 20,1994 Dr. Maesai contacted the E/SA indicating Hood’s need for a corneal transplant. Hood himself contacted the E/SA on May 14, 1994 by phone to request authorization. The E/SA’s representative denied medical treatment on the basis of the lapse of the limitations period. Nevertheless, since the replacement corneal tissue had already been secured and was in transit, Dr. Maesai performed a corneal graft on May 16, 1994.
On August 10, 1994 Hood filed a petition for benefits seeking treatment from Drs. Moore and Maesai and payment for the corneal transplant surgery. The parties stipulated that Hood last received authorized medical treatment on December 21, 1990, that Hood had not requested authorization for medical treatment or otherwise contacted the E/SA until about May 13, 1994, and that the E/SA’s first notice of any medical treatment following December 21, 1990 was receipt of Dr. Moore’s bill on or about March 6, 1994. The E/SA defended on the basis of the statute of limitations. Following- a hearing, the JCC rendered an order rejecting the statute of limitations defense on the basis of the prosthetic device exception in section 440.19(l)(b), Florida Statutes (1990). Upon a finding of a causal connection between the condition necessitating the corneal transplant and Hood’s industrial injury, the JCC awarded the benefits requested. The E/SA have timely appealed.
The determinative issue in this appeal is whether a corneal transplant or graft is a “prosthetic device” for the purposes of section 440.19(l)(b), Florida Statutes (1990). That section provides, in part, that,
[a]ll rights for remedial attention ... shall be barred unless a claim therefor ... is filed ... within 2 years after the date of the last payment of compensation or ... after the last remedial attention furnished by the employer. However, no statute of limitations shall apply to the right for remedial attention relating to the insertion or attachment of a prosthetic device to any part of the body.
(Emphasis supplied.) The statutory language at issue has been treated as an exception to the statute of limitations defense. Roe v. City Investing/General Development Corp., 587 So.2d 1323 (Fla.1991). Thus, in light of the parties’ stipulations, Hood’s petition would be time-barred unless the corneal transplant may be considered a prosthetic device.
Although chapter 440 does not define the term “prosthetic device,” a panel of this court has previously determined that the term “was intended to refer to an artificial substitute or replacement, whether external or implanted, for a missing or defective natural part of the body.” Universal Rivet, Inc. v. Cash, 598 So.2d 154, 157 (Fla. 1st DCA 1992) (e.s.). The supreme court subsequently adopted that definition and added that, for *448 purposes of section 440.19(l)(b), a prosthetic device “requires a relatively permanent functional or cosmetic purpose.” Cash v. Universal Rivet, Inc., 616 So.2d 446, 448 (Fla.1993).
In this ease, there was no medical testimony presented on the issue. In finding that the definition established in Universal Rivet would encompass a corneal transplant, the JCC referred to J.E. Schmidt’s Attorney’s Dictionary of Medicine, one of the reference texts relied upon by this court in that case. The JCC noted the dictionary’s definition of “corneal transplantation” as “a plastic operation in which an opaque or scarred cornea is replaced by a sound, transparent cornea obtained by a donor.” The JCC also noted the dictionary’s definition of “corneal graft” as “a piece of corneal tissue (a piece of cornea), or an entire cornea, used to replace a defective or damaged cornea.” The JCC found that the definitions of corneal transplant and corneal graft in the noted medical reference fall within the definition of prosthesis established in Universal Rivet.
The JCC’s conclusion overlooks the plain language of the definition established in Universal Rivet. As the record indicates, transplanted corneal tissue is living tissue harvested from a human donor. It does not, therefore, constitute an “artificial” substitute or replacement for a “natural” body part. Hood urges that since the transplanted tissue was not his own, it was artificial for him. We reject that argument as it would make the established definition meaningless. Any tissue transplant would fall within the necessarily narrow exception to the statute of limitations. Hood’s argument in this regard acknowledges that a corneal graft would not meet the established definition in the first instance. We conclude that a corneal graft, as living tissue, is not an “artificial substitute or replacement ... for a missing or defective natural part of the body.” Universal Rivet, 616 So.2d at 448. Therefore, having been filed more than two years after the date of the last payment of compensation, Hood’s petition was time-barred. We reverse the JCC’s order on that basis.
The E/SA have also challenged the JCC’s findings in regard to the causal relationship of the corneal graft to the industrial injury. In light of our resolution of the first issue, we need not reach this issue.
The order is REVERSED and REMANDED with directions to dismiss the petition.
BARFIELD and KAHN, JJ., concur.

. Universal Rivet, Inc. v. Cash, 598 So.2d 154 (Fla. 1st DCA 1992).

. Cash v. Universal Rivet, Inc., 616 So.2d 446 (Fla.1993).