644 So.2d 127 (1994)
ROZ FISCHER'S BEAUTY UNLIMITED and National Surety Company, Appellants,
v.
June MATHIS, Travelers Insurance Company, Alice's Beauty Salon and Liberty Mutual, Appellees.
No. 92-2958.
District Court of Appeal of Florida, First District.
October 17, 1994.
Tony A. Turner, Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, for appellants.
Martin J. Mickler, Callahan and Mickler, Jacksonville, for appellee June Mathis.
Guy A. Gladson, Jr., South Miami, for appellee Travelers Ins. Co.
Randall S. Kasper, Miller, Kagan and Chait, P.A., West Palm Beach, for appellees Alice's Beauty Salon and Liberty Mut.
ZEHMER, Chief Judge.
Roz Fischer's Beauty Unlimited and National Surety Company appeal a workers' *128 compensation order requiring that they reimburse Travelers Insurance Company for medical and other benefits paid to Claimant, June Mathis, and reimburse Claimant for certain medical bills, pay Claimant temporary total disability (TTD) benefits, and provide Claimant with medical care. Because the judge of compensation claims erred in holding that National Surety is solely responsible for providing benefits to Claimant without making any findings of fact and rulings on aggravation of Claimant's condition in her subsequent employment, we reverse and remand for further findings and rulings on the issue of aggravation and, if aggravation is found, for further findings and rulings on the issue of apportionment of benefits provided to Claimant.
In December 1983, Claimant, who had worked as a hairdresser for over 20 years, began working for Roz Fischer's in that capacity. National Surety provided workers' compensation coverage to Roz Fischer's from December 9, 1987, through December 9, 1988. Travelers provided similar coverage to Roz Fischer's from March 11, 1989, through March 11, 1990. In August 1988, Claimant noticed that her hands felt as if they were asleep and that she would repeatedly drop things at work. The following month Claimant began to notice tingling in her hands and feel pain in the back of her right shoulder that continued to intensify with the passage of time. Claimant's condition worsened, and, on November 28, 1988, she sought medical treatment from her family physician, Dr. Crissey. Dr. Crissey referred Claimant to an orthopedic surgeon, Dr. Chassner, who referred her to a neurologist, Dr. Wheeler. In March or April 1989, Dr. Wheeler recommended that Claimant have surgery, but Claimant did not have the surgery at that time because none of the carriers would authorize the surgery and Claimant could not afford to pay for it. In August 1989, Claimant terminated her employment with Roz Fisher's and began to work with Alice's Beauty Salon as a hairdresser until December 1990. Liberty Mutual provided coverage to Alice's during Claimant's term of employment there. On January 8, 1991, when she could afford to pay for the surgery, Claimant had surgery performed on her hand and arm to correct right carpal tunnel syndrome. Another surgery was performed in July 1991 to transplant Claimant's right ulnar nerve at the elbow. No doctor opined that Claimant has reached maximum medical improvement (MMI) from her condition.
On August 7, 1989, Claimant filed a claim for benefits against Roz Fischer's and Travelers, stating the date of accident as March 27, 1989, the date on which Dr. Wheeler diagnosed her condition as carpal tunnel syndrome. In March 1990, Claimant apparently also filed a claim for benefits against Roz Fischer's and National Surety, stating the date of accident as November 28, 1988, the date on which Claimant first sought medical treatment for her condition.[1] The proceedings were consolidated and the JCC ordered that Alice's be added as an indispensable party. A hearing was held on the claims for benefits and Travelers' claim for reimbursement pursuant to section 440.42, Florida Statutes, for medical and other benefits paid to Claimant on behalf of Roz Fischer's. The JCC entered a final order finding, among other things, that Claimant suffered compensable injuries due to repetitive trauma suffered in her employment as a hairdresser; that Claimant first sought medical treatment for her condition on November 28, 1988; and that National Surety is solely responsible for providing benefits to Claimant because it was at risk "when the Claimant suffered her last repeated accident which contributed to her condition and necessitated remedial treatment for the Claimant's conditions," citing Aetna Life and Casualty Co. v. Schmitt, 597 So.2d 938 (Fla. 1st DCA 1992). The JCC ordered Roz Fisher's and National Surety to: (1) reimburse Travelers for medical and indemnity benefits provided to Claimant in the amount of $14,031.30; (2) provide Claimant with further medical care by Dr. Dooley; (3) reimburse Claimant for medical bills in the amount of $2,747.65; (4) pay Claimant TTD benefits at the rate of $164.56 per week from *129 January 8, 1991, through the date of the order; (5) reimburse Claimant for prescriptions and medical mileage not paid by Travelers; and (6) pay interest on the amounts paid for the medical bills and TTD benefits. The JCC ordered that Alice's and Liberty Mutual Insurance shall have no responsibility for the claims and reserved jurisdiction as to the amount of attorney's fees and costs due.
The parties do not dispute that Claimant sustained a compensable industrial injury, but dispute which of the three carriers is responsible for paying benefits to Claimant. Roz Fischer's and National Surety contend that there is no competent, substantial evidence to support the judge's finding that National Surety is solely responsible under the repetitive trauma theory because it "was at risk when the Claimant suffered her last repeated accident which contributed to her condition and necessitated remedial treatment for the Claimant's conditions." They argue that the fact that Claimant initially sought medical treatment for her condition on November 28, 1988, when National Surety was at risk, does not constitute competent, substantial evidence that this was the date of the last repeated accident, particularly since Claimant did not miss any time from work when National Surety was at risk and continued to work full time after being diagnosed with right carpal tunnel syndrome. They argue that the medical evidence demonstrates that Claimant suffered a series of subsequent accidents that caused an exacerbation of the initial injury while the subsequent carriers were at risk, and that, therefore, if the claim is found to be compensable under the repetitive trauma theory, the JCC should have apportioned liability between the subsequent carriers.
We reverse and remand for further proceedings because the JCC misapplied the law applicable to this dispute. Subsection 440.42(3), Florida Statutes (1987), establishes the procedure for obtaining reimbursement in a dispute between carriers over the obligation for payment of benefits to a claimant where one of the carriers voluntarily makes payments in discharge of a liability owed to the claimant. It specifically provides in pertinent part:
When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the deputy commissioner shall have jurisdiction to adjudicate such controversy; and if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the deputy shall have jurisdiction to order such reimbursement....
Although Claimant had not reached MMI as of the date of the final hearing as provided by subsection 440.15(5)[2] for apportionment of permanent benefits in disputes between claimants and carriers, subsection 440.42(3) vests the JCC with jurisdiction to hear Travelers' claim for reimbursement from the other carriers for all or part of compensation paid to Claimant and to allocate responsibility or liability among the carriers found to be *130 responsible for paying compensation to Claimant. Cruise Quality Painting v. Paige, 564 So.2d 1190, 1196-97 (Fla. 1st DCA 1990); Flagship Nat'l Bank of Broward County v. Hinkle, 479 So.2d 828 (Fla. 1st DCA 1985). In Paige, this court explained:
nowhere in section 440.42(3) is it mandated that the judge is required to withhold ruling under that section until maximum medical improvement is reached.8 Rather, the clear wording of the statute grants the judge jurisdiction to determine any controversy between carriers with respect to a claim for reimbursement of payments for compensation, remedial treatment, or other benefits under the chapter, at such a time when "it is finally determined that another carrier is liable for all or part of such obligations and duties with respect to such claim." (e.s.) The operative inquiry is not one of maximum medical improvement from the subsequent injury, but of evidentiary proof of causation for temporary benefits claimed, absent a true apportionment claim for a prior permanent condition. Thus, whenever it can be finally determined that one or the other of the carriers is responsible for all or any severable parts of the obligations and duties owed the claimant under the statute, the judge may resolve the controversy and order reimbursement or divide liability "upon appropriate findings of fact." Flagship National Bank of Broward County v. Hinkle, 479 So.2d at 831.
8 Apportionment of permanent benefits is of course premature until MMI from the subsequent injury... .
564 So.2d at 1198.
In deciding the issue of apportionment and reimbursement in the context of the present case, the JCC correctly found Roz Fischer's and National Surety liable for the initial injury for which Claimant complained in November 1988, but the JCC erred in deciding that National Surety is solely responsible for providing benefits to Claimant for the reason stated in the order. In light of this evidence, the JCC erred in not making any findings of fact and rulings regarding aggravation. In the present case, there was evidence in the record to demonstrate that Claimant continued working and that the subsequent work aggravated the condition found in 1988, i.e. that Claimant suffered a series of subsequent accidents which caused an exacerbation of the initial injuries. The JCC's ruling that National Surety was solely liable because it "was at risk when Claimant suffered her last repeated accident which contributed to her condition and necessitated remedial treatment for the Claimant's conditions," is apparently premised on his misunderstanding of Aetna Life & Casualty v. Schmitt, which he cited as controlling authority for his decision. Schmitt and Tokyo House, Inc. v. Hsin Chu, 597 So.2d 348 (Fla. 1st DCA 1992), relied upon in Schmitt, are distinguishable from the present case in that claimants suffered from repeated trauma with recurring incidents occurring while the second carrier was at risk, and the issues on appeal involved disputes between the carriers and the claimants rather than other carriers. Furthermore, in Schmitt, appropriate proof and argument on the issue of allocation between insurers was not made below nor was allocation an issue on appeal. This court held in Schmitt:
Because the claimant suffered from repeated trauma with recurring incidents occurring while Aetna was at risk, as did the claimant in Hsin Chu, thus contributing to her physical condition necessitating remedial treatment, the JCC's order determining that Aetna is required to provide claimant remedial treatment is AFFIRMED.
597 So.2d at 940.
In Hsin Chu, this court explained that [b]ecause only medical benefits accruing after Associated assumed responsibility for the claim and prior to claimant's reaching maximum medical improvement were claimed and awarded, apportionment and merger principles do not apply in this case.
597 So.2d at 352.
This court however stated as dictum in Schmitt that, upon appropriate proof, in repeated trauma cases, assuming the presence of different insurance carriers, permanent or temporary disability benefits can be apportioned between carriers. Schmitt, 597 So.2d at 937, citing Entenmann's Bakery v. Nunez, 592 So.2d 1158 (Fla. 1st DCA 1992). We find *131 the dictum in Schmitt concerning apportionment correct and persuasive.
If aggravation of Claimant's condition occurred and the extent of that aggravation can be determined, then liability should be apportioned based on these findings against Travelers or Liberty Mutual or both. Accordingly, we reverse and remand for findings and rulings by the trial court on the claim of aggravation and apportionment.
REVERSED and REMANDED for further proceedings.
JOANOS and WEBSTER, JJ., concur.
NOTES
[1] The JCC found that such a claim was filed, but the record on appeal does not contain a copy of this claim.
[2] Subsection 440.15(5), Florida Statutes (Supp. 1988), provides in pertinent part:

(a) The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or received compensation therefor, shall not preclude him from benefits for a subsequent injury nor preclude benefits for death resulting therefrom. Compensation for temporary disability, medical benefits, and wage-loss benefits shall not be subject to apportionment.
(b) If a compensable permanent impairment, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition, or is the result of merger with a preexisting impairment, an employee eligible to receive impairment benefits under paragraph (3)(a) shall receive such benefits for the total impairment found to result, excluding the degree of impairment existing at the time of the subject accident or injury or which would have existed by the time of the impairment rating without the intervention of the compensable accident or injury... .