PER CURIAM.
In this worker’s compensation case, the employer and carrier (E/C) have appealed an order of the judge of compensation claims (JCC) awarding the claimant, Sandra Brown, temporary total disability (TTD), temporary partial disability (TPD), and medical benefits for certain periods. The order also directs the E/C to authorize a psychiatrist “[i]n the event that one of Claimant’s treating physicians prescribes or refers Claimant to a psychiatrist for an evaluation and/or treatment. ...” For the reasons discussed below, we affirm in part, reverse in part, and remand this case for further proceedings.
On January 13, 1992, Brown suffered respiratory problems as a result of exposure to chemicals at work, which aggravated her preexisting asthma condition. She was taken by ambulance to a local hospital, where she remained for ten days and received treatment from Dr. William Morgan. For several years prior to this incident, Brown had received treatment for her asthma condition from Dr. Richard Siegel; this treatment included prescriptions for Prednisone, a steroid. After her release from the hospital, she returned to work for the employer until April 16, 1992, when she was discharged for reasons unrelated to her accident. She continued to receive treatment for her asthma, including prescriptions for Prednisone, from Dr. Morgan. In addition, Brown subsequently developed avascular necrosis, a condition for which she underwent two hip replacements, one on July 27, 1993, and the other on November 9,1993.
Brown filed claims for benefits seeking payment of medical bills related to her hospitalization, her asthma treatment, and the treatment for her hip condition; TTD, TPD or wage loss from January 13, 1992, to the date of maximum medical improvement (MMI); permanent partial/permanent total disability benefits from MMI; authorization for continued treatment by Dr. Morgan and Dr. Siegel; authorization for a psychiatrist; and penalties, interest, costs, and attorney’s fees. The E/C denied the requested benefits, asserting that no accident had occurred and that Brown’s medical problems and need for psychiatric treatment were unrelated to an on the job injury.
A hearing took place on November 3,1994, before JCC John Paul Jones. JCC Jones entered an amended order on January 27, 1995, finding that a compensable accident had occurred and awarding the requested benefits. Regarding the requested authorization for psychiatric treatment, the JCC made the following award:
5. In the event that one of Claimant’s treating physicians prescribes or refers Claimant to a psychiatrist for evaluation and/or treatment, then in that event, I hereby Order that said psychiatrist shall be authorized by the Employer/Carrier. If the parties are unable to agree on a psychiatrist, I reserve jurisdiction to name a psychiatrist to provide evaluation and treatment, if necessary.
The E/C appealed the JCC’s order. This court dismissed the appeal for lack of jurisdiction, however, because the E/C had not sought review of the JCC’s ruling on com-pensability and the court determined that Rule 4.160(a)(1)(C), Florida Rules of Workers’ Compensation Procedure, permitted interlocutory review only of a ruling on the issue of compensability of an accident or occupational disease. Consultants & Designers v. Brown, 677 So.2d 915 (Fla. 1st DCA 1996).
On November 20, 1996, JCC Stephen J. Johnson rendered a second amended order *1230 that “reflects Judge Jones’ findings at the hearing of November 3, 1994, except for the modification to paragraph five (5) of the de-cretal portion of the Order.” Indeed, the only substantial difference between the two orders is JCC Johnson’s deletion of the second sentence in paragraph 5, which reserved jurisdiction regarding the appointment of a psychiatrist. The E/C have appealed and raise four points: (1) no competent substantial evidence supports the JCC’s finding that the E/C were responsible for medical treatment related to Brown’s respiratory condition following her hospitalization, where her physicians concurred that the exposure constituted merely a temporary exacerbation of her preexisting respiratory condition; (2) the JCC erred in finding that Brown’s avascular necrosis and resulting medical treatment, including bilateral hip replacement surgeries, were causally related to her industrial injury where the only medical evidence supporting causation was based on speculation and mere possibility; (3) the JCC erred in ordering the E/C to pay TTD and/or TPD benefits subsequent to January 22, 1992, the date Brown was discharged from the hospital; and (4) the JCC erred in ordering the E/C to authorize a psychiatric evaluation and/or treatment where there is no medical evidence in the record that she currently requires such care and no evidence of causal relationship to the January 1992 accident.
Concerning the first point on appeal, both Dr. Siegel and Dr. Morgan, the physicians whose testimony the JCC accepted, indicated that the January 1992 exposure resulted in only a temporary exacerbation of Brown’s chronic respiratory condition. Dr. Morgan testified that the exposure aggravated Brown’s asthma and such aggravation, or exacerbation, would have lasted only one to three months. Dr. Morgan further testified that Brown required no further medical care as a result of the January 1992 incident. Dr. Siegel agreed with Dr. Morgan’s opinion that the exposure resulted in only a temporary exacerbation of Brown’s asthma; however, Dr. Siegel did not specifically testify regarding the duration of the exacerbation. Based on these doctors’ opinions, accepted by the JCC, Brown’s exposure resulted in only a temporary exacerbation of her preexisting asthma condition and the longest the exacerbation could have extended would have been through April 13, 1992. Therefore, competent substantial evidence does not support the JCC’s award of continued treatment for Brown’s asthma beyond April 13, 1992, as no medical testimony establishes that her need for such treatment resulted from her exposure at work in January 1992. Accordingly, we reverse the JCC’s award of such treatment beyond April 13, 1992, and remand for the JCC to determine the point, between Brown’s release from the hospital and April 13, after which the exacerbation no longer affected her asthma condition.
Regarding the second point on appeal, the JCC found that Brown’s exposure at work resulted in her need for “subsequent avascular necrosis hip replacements ... within a reasonable degree of medical probability.” The JCC specifically accepted the opinion of Dr. Siegel that “the avascular necrosis in the Claimant’s hips was causally related within a reasonable degree of medical certainty to the exposure and resulting treatment with steroids.” Because competent substantial evidence supports the JCC’s findings, we affirm this point on appeal. See, e.g., Fincannon v. Eastern Airlines, 611 So.2d 28, 30 (Fla. 1st DCA 1992) (“A claimant seeking workers’ compensation benefits is not required to show her compensable injury was the sole cause of her disability. So long as the claimant’s impairment can be found to be a contributing factor, benefits are appropriate.”); Turner v. G. Pierce Wood Memorial Hosp., 600 So.2d 1153, 1156 (Fla. 1st DCA 1992) (“In establishing causation, it is not necessary for the claimant to show that the industrial accident is the sole cause of the injury or condition, but only that it is either a competent, precipitating or accelerating cause of the injury.” (emphasis added)). Cf. State, Div. of Risk Mgmt. v. Martin, 690 So.2d 651 (Fla. 1st DCA 1997) (doctor’s testimony did not constitute competent substantial evidence as to causation because it was based on speculation, made without knowledge of claimant’s relevant medical history, and based “virtually entirely” upon claimant’s false report of causal connection between accident and subsequent surgery). We note, however, that this case involves a pre-1994 date of accident and, had the accident occurred in 1994 or later, the claimant *1231 would have had to satisfy a more stringent burden of proof, i.e., she would have had to show that her original work-related injury, the exacerbation of her asthma condition, constituted the major contributing cause of her hip condition. See § 440.09(1)(a), Fla. Stat. (Supp.1994); Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639 (Fla. 1st DCA 1996).
In the third point on appeal, appellants assert that the JCC erred in ordering the E/C to pay indemnity benefits for periods subsequent to Brown’s hospitalization in January 1992. Following her release from the hospital, Brown continued to work her regular hours for the employer until April 16, 1992. In addition, Brown testified that during this period she made the same amount of money that she made prior to the January 1992 accident. Therefore, the JCC erred in awarding Brown TPD benefits following her discharge from the hospital through April 16, 1992. See § 440.15(4)(a), Fla.Stat. (1991) (“In ease of temporary partial disability, benefits shall be based on actual wage loss (emphasis added)). We also reverse the award of TPD benefits from April 17, 1992, through July 8,1992, as well as the award of TTD benefits from July 9,1992, through July 26, 1993, because no medical evidence indicates that Brown’s condition during this period was related to her industrial accident. We affirm the award of TTD benefits from July 27, 1993, through February 9, 1994, as well as the award of TPD from February 10, 1994, and continuing because the E/C agree that if Brown’s avascular necrosis is causally related to her accident, then she is entitled to these benefits.
Finally, in the fourth point on appeal, the E/C assert that the JCC erred in ordering the E/C to authorize a psychiatric evaluation and/or treatment. Although Dr. Morgan indicated that Brown was depressed and that he had “weaned down” her steroids “because it was felt to possibly be contributing to her emotional lability at that time,” no medical testimony indicates that Brown needs psychiatric treatment as a result of the January 1992 accident. The JCC seemed to recognize this deficiency as he ordered the E/C to authorize a psychiatrist “[i]n the event that one of Claimant’s treating physicians prescribes or refers Claimant to a psychiatrist for evaluation and/or treatment....” Because the E/C are entitled to be heard on the issue of whether or not any psychiatric condition Brown may have is related to her industrial accident before such treatment is authorized, the JCC erred in ordering the E/C to authorize a psychiatric evaluation and/or treatment “in the event” one of Brown’s treating physicians prescribes or refers her to a psychiatrist. See § 440.13(2)(a), Fla. Stat. (1991) (“[N]o health care provider may refer the employee to another health care provider, diagnostic facility, pain program, work hardening program, therapy center, or other facility without the prior authorization from the carrier or the employer if self-insured except in cases where emergency care is required.”); Wal Mart Stores, Inc. v. Mann, 690 So.2d 649, 650 (Fla. 1st DCA 1997) (The JCC erred in authorizing psychiatric care absent evidence that such care is medically necessary where “[t]he claimant presented no medical testimony that her psychiatric condition was causally related to her industrial injury.”). We therefore reverse this point on appeal.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
BARFIELD, C.J., and ERVIN and KAHN, JJ., concur.