750 So.2d 748 (2000)
EASTERN INDUSTRIES, INC., Appellants,
v.
Kathryn BURNHAM, Appellee.
No. 1D97-4866.
District Court of Appeal of Florida, First District.
February 4, 2000.
*749 Susan Sapoznikoff Foltz and Kimberly A. Johnson of Granger, Santry, Mitchell & Health, P.A., Tallahassee, for Appellants.
John P. Moneyham, Panama City and Bill McCabe, Longwood, for Appellee.
VAN NORTWICK, J.
In this workers' compensation appeal, Eastern Industries, Inc. and Humana/PCA, jointly the employer/carrier, challenge an order which awarded permanent and total disability (PTD) benefits to Kathryn Burnham, appellee and claimant below, and which assessed a penalty against the carrier for failure to timely pay benefits. We affirm the PTD award but reverse the assessment of a penalty.
There is no dispute that Burnham sustained a compensable injury to her right shoulder on September 28, 1994, while working as a pump assembler. The treating orthopedist diagnosed impingement syndrome of the right shoulder and, following surgery, additionally diagnosed a partial tear of the rotator cuff and degenerative tearing in the labrum. Following a significant period of treatment by her orthopedist, Burnham returned to work for Eastern Industries as a quality control specialist, but left twelve days later complaining of unbearable pain while working. Burnham was eventually referred to a pain management specialist for treatment of persistent myofascial pain syndrome. She thereafter filed a petition seeking PTD benefits, which the employer/carrier controverted, and the cause proceeded to a hearing. In the order on appeal, the judge of compensation claims (JCC) found that Burnham sustained a catastrophic injury as defined in sections 440.15(1) and 444.20(34), Florida Statutes (1994). In finding that Burnham was entitled to PTD benefits, pursuant to section 440.34(f), Florida Statutes (1994), see City of Pensacola Firefighters v. Oswald, 710 So.2d 95, 98 (Fla. 1st DCA 1998), the JCC utilized the five-step sequential evaluation process for determining disability under the federal Social Security Act provisions. See 20 C.F.R. pt. 404; Foote v. Chater, 67 F.3d 1553 (11th Cir.1995).
The employer and carrier argue that the JCC erred in finding that Burnham has a severe impairment, that she cannot perform past relevant work (step four of the five-step test for determining disability under 20 C.F.R. section 404), and that there is not work in the national economy which Burnham can perform (step five). Because competent, substantial evidence in the record supports the findings of the JCC as to each step of the disability analysis, we affirm. Frederick v. United Airlines, 688 So.2d 412 (Fla. 1st DCA 1997)(the standard of review for factual determinations is whether competent, substantial evidence supports the JCC's finding, not whether the record contains evidence which could be interpreted to support arguments rejected by the JCC).
In addition to seeking PTD benefits, Burnham sought to assess a penalty against the employer/carrier pursuant to section 440.20(6), which provides that if an installment of compensation benefits is not paid within seven days after it becomes due, then a penalty may be assessed. The JCC found that Burnham was entitled to a 20% penalty from April 29, 1996, the date the JCC found that Burnham attained maximum medical improvement (MMI), to *750 the date of the order under review. In pertinent part, the order under review provides:
Claimant seeks [a] 20% penalty on permanent total disability benefits pursuant to section 440.20(6) which applies if any installment of compensation is not paid with seven (7) days after it becomes due. An exception is when a notice of denial is filed in a 120-day case [sic]. Under the former law simply filing a notice of denial stopped the penalties. That language does not exist in the current law. Another exception is when non-payment results from conditions over which the employer or carrier had no control. There is no evidence of such circumstance in this case. Accordingly I find claimant is entitled to a 20% penalty on permanent total benefits from April 29, 1996 to the date of payment of benefits pursuant to this Order.
The employer/carrier argue on appeal that PTD benefits were not due in this case until there was a determination by the JCC that Burnham was in fact permanently and totally disabled, especially given that such a finding in the instant case was premised upon vocational testimony and not upon medical evidence. In support of this argument, the employer/carrier note that section 440.15(1)(a) suggests that PTD status must be "adjudged." The employer/carrier further assert that Burnham had not sought PTD benefits as of the date assigned by the JCC as the date of MMI, and thus it would be unfair to assess a penalty as of that date. In response, Burnham argues that a penalty was assessed in the instant case on the ground that the employer/carrier failed to file a notice of denial within 14 days of the filing of the petition for benefits, pursuant to section 440.192(8), Florida Statutes (Supp. 1994).
Section 440.20, Florida Statutes (Supp. 1994) provides in pertinent part:
(1)(a) Unless it denies compensability or entitlement to benefits, the carrier shall pay compensation directly to the employee....
(2) The carrier must pay the first installment of compensation or deny compensability no later than the 14th day after the employer receives a notice of injury or death....
(4) If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits....
* * *
(6) If any installment of compensation for death or dependency benefits, disability, permanent impairment, or wage loss payable without an award is not paid within 7 days after it becomes due, there shall be added to such unpaid installment a punitive penalty ... unless notice is filed under subsection (4) or unless such non-payment results from conditions over which the employer or carrier had no control.
The employer/carrier could have avoided the imposition of a penalty if it had commenced payment of benefits while undertaking an investigation of the claim pursuant to section 440.20(4). Nevertheless, contrary to Burnham's argument, the mere filing of a notice of denial within 14 days of the filing of the petition for benefits would not necessarily have avoided the assessment of a penalty under the provisions of subsection (6) of section 440.20. Subsection (6) requires payment of compensation "within 7 days after it becomes due." § 440.20(6), Fla. Stat. (Supp.1994). The question remains, however, when did installments of Burnham's PTD benefits become due?
We are not persuaded that PTD benefits, as a general rule, become due only upon the finding of entitlement to such *751 benefits by a judge of compensation claims, despite the use of the term "adjudged" in section 440.15(1)(a). Cf. Old Republic Surety Co. v. Reischmann, 713 So.2d 434, 436 (Fla. 2d DCA 1998)(payment by surety on guardianship bond becomes due when misconduct of principal occurs, not when principal's liability established by court order). The legislature has not defined the term "becomes due" for purposes of this statute. Reading subsection (6) in pari materia with all provisions of section 440.20, however, it is apparent that the penalty provision was intended to support the self-executing purposes of workers' compensation law. Thus, subsection (6) mandates a "punitive penalty" on the employer or carrier who refuses to pay compensation benefits at the time the facts then known to the employer and carrier would support an obligation to pay, unless a notice is filed under section 440.20(4) or unless such non-payment results from circumstances over which the employer or carrier had no control. § 440.20(6), Fla. Stat. The JCC makes the determination to levy this penalty at the time of the merits hearing, but based upon the facts known to the employer and carrier as of the date the claimant alleges the payment of benefits was due. Thus, under subsection (6), an employer or carrier, who is faced with competent, substantial evidence that supports the elements establishing an obligation to pay benefits, refuses at its peril either to make payment within 7 days of obtaining knowledge of the evidence supporting the payment obligation or to comply with subsection (4). Here, because no competent, substantial evidence available to the employer/carrier supported a finding that PTD benefits became due as of April 26, 1996, the assessment of a penalty was in error.
Burnham's petition for PTD benefits dated December 4, 1996, was premised on the finding of MMI as of January 17, 1996 by Mark M. Williams, M.D., the treating orthopedic surgeon, who stated in his report of January 17, 1996, that he believed that Burnham had reached MMI as of the date of the report, and rather than opining that she was permanently and totally disabled, however, he released her "to lightduty capacity ... which is essentially sedentary."[1] On January 30, 1996, Dr. Williams reported Burnham's impairment rating as 16% whole body. Upon a reevaluation by Dr. Williams three months later, Burnham's work status remained the same. On June 27, 1996, after Burnham had commenced therapy with a pain management specialist, Dr. Williams reported "significant improvement in both function, as well as pain." Then, in a report dated September 30, 1996, Dr. Williams stated that Burnham "seems to have significant limited function and I think some of this could be coming from the neck," and ordered a re-evaluation in six months. The next report in sequence in the record is dated March 31, 1997, in which Dr. Williams noted that Burnham's right shoulder "seem[ed] to be fairly stable and tolerable for her." She was continued at that time at light duty with the restriction of no overhead lifting. Following an examination on July 3, 1997, Dr. Williams reported that he was recommending an evaluation by a neurologist due to "persistent recurrent symptoms." Her work status remained at light duty with the restriction of no overhead lifting with the right extremity. The final report of Dr. Williams contained in the record on appeal is dated July 30, 1997. In this report, Dr. Williams indicates that the claimant continue treatment with the pain management specialist, but did not authorize a consultation by a neurologist, and continued Burnham at the same work status and restriction.
As suggested above, the finding of PTD by the JCC was premised not upon medical *752 evidence of a permanent and total disability, but upon Burnham's inability to secure work in the national economy given her restrictions, age, education and work experience. In reaching this finding the JCC relied on the testimony of Burnham's vocational experts who filed their report on September 8, 1997, a date that was approximately two weeks before the merits hearing. The record contains no other evidence suggesting PTD from a vocational standpoint, and no medical evidence that Burnham was PTD as of April 26, 1996. In determining that claimant was entitled to a 20% penalty under section 440.20(6), the JCC made no findings as to the factual basis supporting his conclusion that the PTD benefits had become due on April 26, 1996. After a review of the record on appeal, we conclude that there is no competent, substantial evidence in the record on which the JCC could find that PTD benefits became due as of April 29, 1996. Accordingly, on the findings and record before us, it was error to assess a penalty pursuant to section 440.20(6).
Accordingly, the order is AFFIRMED in part and REVERSED in part.
BOOTH AND PADOVANO, JJ., CONCUR.
NOTES
[1] The JCC did not find that PTD benefits were due as of January 17, 1996. Rather the JCC found that PTD benefits were due as of April 29, 1996, the date Robert J. Joseph, M.D., a board certified anesthesiologist who specializes in pain management, suggested as the date Burnham reached MMI. Dr. Joseph, however, did not opine that Burnham was permanently and totally disabled as of that date.