791 So.2d 1138 (2001)
B & L SERVICES, INC., d/b/a Gray Line of Orlando and Claims Control, Inc., Employer/Carrier # 1, Appellants/Cross-Appellees,
v.
COACH USA f/k/a Gray Line of Orlando and Cigna, Employer/Carrier # 2, Appellee, and
Rafael Guzman, Claimant, Appellee/Cross-Appellant.
No. 1D00-1570.
District Court of Appeal of Florida, First District.
June 18, 2001.
Rehearing Denied July 18, 2001.
*1140 Robert L. Dietz and C. Douglas Green of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for Appellant/Cross-Appellee.
Jamey S. Rodgers of McDonald and Rodgers, P.A., Altamonte Springs for Appellee/Cross-Appellee.
Neal P. Pitts and Matthew D. Valdes of Neal P. Pitts, P.A., Orlando, for Appellee/Cross-Appellant.
LEWIS, J.
B & L Services, Inc., employer # 1, appeals an order from the Judge of Compensation Claims (JCC) attributing 100% responsibility to it for Rafael Guzman's carpal tunnel condition. Rafael Guzman, the claimant, cross-appeals the JCC's assignment of an overall 2% impairment rating and its failure to award penalties for the temporary benefits due but unpaid. We affirm the JCC's finding that employer # l's work activities were the major contributing cause to the claimant's disability and need for treatment. Competent, substantial evidence exists in the record to support this finding. We also affirm the JCC's assignment of an overall 2% impairment rating. However, we reverse on the issue of reimbursement/contribution and attorney's fees because the JCC misapplied the law on this issue. Furthermore, the JCC erred in failing to make any findings of fact regarding when the obligation to pay temporary benefits became due. Therefore, we remand with directions for the JCC to make the appropriate findings and to determine whether statutory penalties should be assessed.

Background
In February 1994, Rafael Guzman, the claimant, began working for employer # 1 in its auto body repair shop. During his three years with employer # 1, he used various vibrating tools such as sanders, drills and grinders. In April 1996, the claimant began to experience numbness in his hands and wrists, particularly his right hand. He did not report his numbness and pain to employer # 1 until May 14, 1997. The day after, on May 15, 1997, employer # 1 sold the company to Coach USA, employer # 2.
On May 21, 1997, Dr. Barnard examined the claimant and diagnosed the claimant with bilateral carpal tunnel syndrome related to his work as an auto body repairman. On July 25, 1997, Dr. Barnard placed the claimant at MMI with a zero percent impairment rating because the claimant stated that he was not having any appreciable numbness.
After reporting his numbness on May 14, 1997, the claimant voluntarily began performing light duty work. He still dropped items and was never able to lift a gallon of milk with either hand; but he was not experiencing the same degree of numbness as before. Around July 1997, the claimant's two co-workers who assisted him in the body shop quit. As employer # 2 did not hire anyone to replace the assistants, the claimant was required to perform all the repair duties.
The claimant continued to work by himself in the body shop until October 28, 1997. He testified that he had to quit because he could no longer handle the numbness and pain in his hands and wrists. After he quit, the claimant testified that within three to four months the numbness and pain lessened. The claimant claimed October 28, 1997, as the date of his second injury.
*1141 On November 10, 1997, Dr. Barnard recommended carpal tunnel release surgery. Employer/carrier # 1 (E/C # 1) initially denied the surgery. It filed a Notice of Denial for medical treatment and surgery, on September 21, 1999, stating that the need for treatment and surgery was attributed to the work activities of employer # 2. The claimant went to Dr. Gupta, on January 26, 1998, for an independent medical examination arranged by E/C # 1. Dr. Gupta also diagnosed the claimant with bilateral carpal tunnel syndrome and recommended surgery. In his deposition, Dr. Gupta opined that the claimant's condition developed under his first employment and it was aggravated further by the heavy workload under his second employment.
On October 1, 1998, E/C # 1 voluntarily authorized the surgery with Dr. Barnard. Dr. Barnard performed the surgery and released the claimant to light duty employment on November 3, 1998. He placed the claimant at MMI on December 8, 1998 and gave the claimant an overall whole body impairment rating of 11%. On April 22, 1999, Dr. Shure conducted an independent medical examination of the claimant for E/C # 2. Dr. Shure stated that the claimant developed carpal tunnel syndrome over the three-year period with employer # 1. He attributed approximately 90% of the responsibility to employer # 1 and 10% to employer # 2 based on the length of time the claimant was employed with each employer. Dr. Shure gave the claimant a 2% impairment rating.
The JCC held a merits hearing on the claimant's petition for benefits on May 18, 1999. The issues presented to the JCC were determining responsibility between the employers for the claimant's unpaid temporary total disability benefits from October 28, 1997 through November 3, 1998 and determining whether E/C # 2 should reimburse E/C # 1 or contribute for the surgery, medical treatment, and indemnity benefits. E/C # 1 has paid impairment benefits to the claimant since October 1, 1998. E/C # 1 argued that the major contributing cause of the claimant's injury was the additional employment with employer # 2, and that E/C # 2 should contribute its portion for the claimant's benefits. In addition, the claimant sought a determination of his impairment rating and requested penalties, interest and attorney's fees and costs.
The JCC continued the hearing to allow an Expert Medical Advisor (EMA) to determine the relative responsibility of each employer. Dr. White was appointed and examined the claimant on September 9, 1999. In his deposition, Dr. White stated that the claimant would have eventually required surgery whether he continued doing auto body repair work or not. He further testified that the major contributing cause of the claimant's surgery, disability and need for treatment was the work performed for employer # 1. He opined that the responsibility should be allocated 90% to employer # 1 and 10% to employer # 2 based on the length of employment with each employer. He also gave the claimant a 2% impairment rating.
On February 14, 2000, the JCC conducted the second merits hearing. The JCC found that the claimant continued to suffer symptoms throughout the entire period, despite Dr. Barnard's zero percent impairment rating. The JCC attributed 100% responsibility to E/C # 1 because the evidence did not support the finding that the claimant's second employment was the major contributing cause of the need for surgery. E/C # 1 was ordered to pay temporary total disability benefits and temporary partial disability benefits. E/C # 1 also was responsible for the claimant's medical compensation and rehabilitative benefits. The JCC also found the claimant's *1142 overall impairment rating was 2% based on Drs. Shure's and White's testimonies. The JCC also awarded reasonable attorney's fees to the claimant.

Major Contributing Cause
Competent, substantial evidence exists in the record to support the JCC's finding that employer # l's employment was the major contributing cause of the claimant's carpal tunnel condition. Therefore, the claimant's condition is compensable. Accordingly, we affirm on this issue.

Reimbursement/Contribution[1]
While employment with employer # 1 was the major contributing cause, we hold that the JCC erred in using a major contributing cause standard for determining whether employer # 1 was entitled to contribution from employer # 2. The JCC found that "the employment with Employer/Carrier # 2 did result in an acceleration of claimant's need for surgery, but that the need for surgery was inevitable and that the acceleration did not rise to the level of major contributing cause so as to place a percentage of responsibility for the need for treatment and disability on Employer/Carrier # 2." The JCC appears to have confused the standard for determining compensability with the standard for determining responsibility.
Section 440.42(3), Florida Statutes (1995), provides the procedure for resolving disputes between carriers regarding responsibility for compensation. It provides in pertinent part: "When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the judge of compensation claims shall have jurisdiction to adjudicate such controversy." Prior to 1994, this Court held that the JCC must consider the actual extent to which each accident has contributed to a compensable disability in determining contribution between multiple carriers under section 440.42. See Copeland Steel Erectors v. McCollom, 587 So.2d 658 (Fla. 1st DCA 1991); Standard Fire Ins. Co. v. U-Haul Co., 551 So.2d 580 (Fla. 1st DCA 1989); Sauer Indus. Contracting, Inc. v. Ditch, 547 So.2d 276 (Fla. 1st DCA 1989).
In 1994, the Florida legislature substantially amended the workers' compensation laws. One of these amendments included a new burden of proof standard for a claimant to prove compensability: major contributing cause. See § 440.09, Fla. Stat. (1995). However, the legislature did not include section 440.42 in its amendments. See Ch. 93-415, Laws of Fla. The question on appeal in this case is whether the 1994 amendments changed the standard for determining contribution under section 440.42(3) to a major contributing cause standard.
Where the legislature fails to make substantive changes to the pertinent statutory language, it is assumed that the legislature accepted the prior judicial construction of the statute. See State v. Hall, 641 So.2d 403, 405 (Fla.1994); White v. Johnson, 59 So.2d 532, 533 (Fla.1952) (legislative inaction indication of its acceptance of prior construction of statute). As the legislature did not substantially change section 440.42 in its 1994 amendments, we assume that it approved this Court's previous *1143 construction of the applicable standard for reimbursement and contribution between multiple carriers. Furthermore, the major contributing cause language in section 440.09(1), Florida Statutes (1995) applies only to determining whether an injury is covered under workers' compensation. See Closet Maid v. Sykes, 763 So.2d 377, 381 (Fla. 1st DCA 2000); see also Myers v. Williams, 770 So.2d 1246 (Fla. 1st DCA 2000); Consultants & Designers v. Brown, 697 So.2d 1228 (Fla. 1st DCA 1997) (to establish coverage after 1994 under major contributing cause, a claimant has a higher burden of proof). Thus, the first step is determining whether the injury is compensable under the major contributing cause standard in section 440.09(1). The next step is determining liability between multiple employers/carriers under section 440.42(3).
As we conclude that the legislature did not intend to apply the major contributing cause standard to section 440.42(3), the JCC must evaluate any reimbursement or contribution claim under the pre-existing standard. "The determinative factor in placing liability under Section 440.42(3) is whether the second compensable accident causes injury which is independent from or an exacerbation of the first compensable accident. Section 440.42(3) thereafter allows the deputy [JCC] to divide liability according to each carrier's responsibility." See U.S. Elec. Co. v. Sisk Elec. Service, Inc., 417 So.2d 738 (Fla. 1st DCA 1982). A causal connection must exist between the claimant's employment and second industrial injury in order to justify apportionment of liability among carriers. See Custom Architectural Metals v. Bradshaw, 623 So.2d 804, 806 (Fla. 1st DCA 1993). Here, the JCC found that employment with employer # 2 aggravated the claimant's carpal tunnel condition. Therefore, the JCC found some evidence that his work environment at employer # 2 contributed to his injuries. As there is a causal connection between the claimant's injuries and his employment with employer # 2, employer # 2 is liable for a portion of the claimant's disability. See Roz Fischer's Beauty Unlimited v. Mathis, 644 So.2d 127 (Fla. 1st DCA 1994); Custom Architectural Metals, 623 So.2d at 806; CNA Ins. Co. v. Kemper Ins. Co., 596 So.2d 81 (Fla. 1st DCA 1992). Employer # 1 is entitled, as a matter of law, to contribution from employer # 2.
Accordingly, we reverse on this issue and remand for further findings and rulings on the issue of contribution between the two employers/carriers and the extent of employer # 2's aggravation of the claimant's condition which are consistent with this opinion.

Attorney's Fees
As the JCC did not err in finding that the claimant prevailed on his compensation claims, the JCC properly awarded the claimant an entitlement to attorney's fees. See § 440.34, Fla. Stat. (1995). However, as with the compensation benefits, the JCC erred in failing to apportion the attorney's fees between the two carriers. Based on the reimbursement/contribution discussion, we reverse and remand on this issue also.

Impairment Rating
The claimant argues that, under section 440.1925(1), employer # 1 could not dispute Dr. Barnard's 11% impairment rating by selecting an IME or using employer # 2's IME. However, this section merely prohibits the carrier from obtaining an IME to render an opinion on permanent impairment when the carrier selects the treating physician. Section 440.1925(5), Florida Statutes (1995), directs the JCC to determine the claimant's permanent impairment rating based on the estimates in evidence. Both Drs. Shure and White testified *1144 that the claimant's impairment rating was 2%. As Dr. White was the Expert Medical Advisor requested by the JCC, his testimony was admissible in the proceedings pursuant to section 440.1925(4), Florida Statutes (1995). Competent, substantial evidence, in the form of Dr. White's testimony, exists to support the JCC's assignment of a 2% impairment rating.
The JCC specifically rejected Dr. Barnard's testimony that the impairment rating should be 11%. Dr. Barnard indicated that he calculated his impairment rating shortly after the claimant's surgery and that the claimant could continue improving in the future. As Drs. Shure and White's examinations occurred later, they had a better opportunity to rate the claimant's impairment. Thus, the JCC did not err in accepting Drs. Shure's and White's testimonies over Dr. Barnard's. We affirm the JCC's assignment of an overall 2% impairment rating.

Penalties
The claimant argues that the JCC erred in failing to award penalties on the temporary benefits awarded. Section 440.20, Florida Statutes (1995), provides in pertinent part:
(1)(a) Unless it denies compensability or entitlement to benefits, the carrier shall pay compensation directly to the employee....
(2) The carrier must pay the first installment of compensation or deny compensability no later than the 14th day after the employer receives notice of the injury....
(4) If the carrier is uncertain of its obligation to provide benefits or compensation, it may initiate payment without prejudice and without admitting liability. The carrier shall immediately and in good faith commence investigation of the employee's entitlement to benefits under this chapter and shall admit or deny compensability within 120 days after the initial provision of compensation or benefits.
(6) If any installment of compensation for death or dependency benefits, disability, permanent impairment, or wage loss payable without an award is not paid within 7 days after it becomes due... there shall be added to such unpaid installment a punitive penalty ... unless notice is filed under subsection (4) or unless such nonpayment results from conditions over which the employer or carrier had no control.
That is, unless a notice is filed under section 440.20(4) or nonpayment occurs from circumstances out of the employer/carrier's control, a penalty applies when the employer/carrier refuses to pay benefits at the time facts then known to the employer/carrier would support an obligation to pay. Eastern Indus., Inc. v. Burnham, 750 So.2d 748 (Fla. 1st DCA 2000).
The JCC stated that the claimant raised the issue of statutory penalties. However, the JCC failed to make findings of fact concerning when the obligation to pay benefits became due. Without these findings of fact, it is difficult to determine if a statutory penalty applies in this case. Therefore, we remand this issue to the JCC to make the appropriate findings of fact and to determine based on those findings whether penalties should be awarded under section 440.20.

Conclusion
Because competent, substantial evidence exists to support the JCC's determination that employment with employer # 1 was the major contributing cause of the claimant's carpal tunnel condition, we affirm on this issue. We also affirm the JCC's assignment of a 2% impairment rating. However, we reverse the JCC's finding that employer # 1 is 100% responsible for *1145 the claimant's temporary total disability, temporary partial disability, impairment, medical and rehabilitation benefits, and attorney's fees. On remand, the JCC should conduct proceedings to determine the correct apportionment of liability between the two employers/carriers. Furthermore, we remand for the JCC to make the appropriate findings of fact on the issue of statutory penalties.
AFFIRMED in part; REVERSED in part; REMANDED with directions.
VAN NORTWICK, J., CONCURS; BENTON, J., CONCURS in part and DISSENTS in part with opinion.
BENTON, J., concurring in part and dissenting in part.
I share the view implicit in the majority opinion that Rafael Guzman's carpal tunnel syndrome is properly viewed, not as an occupational disease, but as the result of industrial accidents. See Associated Indus. Ins. Co. v. Fed. Ins. Co./Chubb Group, 707 So.2d 880, 883 (Fla. 1st DCA 1998). Like the majority, I find no error in the findings of fact the judge of compensation claims made (as far as they went), or her conclusion that repetitive trauma during the first of the two employments caused the injury that was the major contributing cause of his disability and need for treatment. But the judge of compensation claims was also correct, in my view, in declining to require contribution from the second employer. To the extent the court today holds otherwise, I respectfully dissent.

I.
Inasmuch as Mr. Guzman began work for the first employer in February of 1994, the statutory provisions requiring proof of "the major contributing cause" apply here. Since January 1, 1994, section 440.09, Florida Statutes, has provided:
(1) The employer shall pay compensation or furnish benefits required by this chapter if the employee suffers an accidental injury ... arising out of work performed in the course and the scope of employment....
(a) This chapter does not require any compensation or benefits for any subsequent injury the employee suffers as a result of an original injury arising out of and in the course of employment unless the original injury is the major contributing cause of the subsequent injury.
(b) If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains the major contributing cause of the disability or need for treatment.
Because the injury arising out of and in the course and scope of Mr. Guzman's first employment was the major contributing cause of his disability and need for treatment, subsection (1)(a) makes the first employer responsible for benefits while subsection (1)(b) relieves the second employer of responsibility.
If Mr. Guzman had sought benefits directly from the second employer in a separate proceeding, he would have recovered nothing. The same result should obtain here. "Significantly, sections 440.09(1) and 440.02(32) use the definite article `the,' and not `a,' before the term `major contributing cause.'" Orange County MIS Dep't. v. Hak, 710 So.2d 998, 999 (Fla. 1st DCA 1998).
It is ... no longer enough for an injured worker to show that a workplace accident is causally related [to] a particular *1146 injury, as in Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla.1973), or that the accident contributed to the need for treatment. Coverage is available under the statute only if the workplace accident `is and remains the major contributing cause of the disability or need for treatment.'
Closet Maid v. Sykes, 763 So.2d 377, 381 (Fla. 1st DCA 2000) (en banc). "An accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death." Hernando County Sch. Bd. v. Dokoupil, 667 So.2d 275, 277 (Fla. 1st DCA 1995) (quoting § 440.02(32), Fla. Stat. (Supp. 1994)). Because no injury suffered in the course and scope of the second employment was the major contributing cause of disability or need for treatment, the second employer was not responsible for Mr. Guzman's benefits.
The judge of compensation claims decided that injury attributable to industrial accident(s) during the earlier employment was the major contributing cause of his subsequent disability and need for treatment on the basis of evidence that repeated trauma during the earlier, much longer period of employment before the shop changed hands was the principal one medical expert put the fraction at ninety percentcause of Rafael Guzman's carpal tunnel syndrome and consequent disability. Nobody has called this conclusion or the findings on which it rests into question, and the panel today unanimously approves these findings and that conclusion.

II.
The major contributing cause amendments were modeled after similar provisions in Oregon law. See Letter from Lawton Chiles, Governor, State of Florida, to Stephen R. Wise, Florida State Representative (Oct. 22, 1993) (on file with the Florida State Archives). It is therefore appropriate to look to Oregon's major contributing cause provisions, as definitively construed by the Oregon Supreme Court, for guidance. See State v. Aiuppa, 298 So.2d 391, 394 (Fla.1974) (holding that when a statute is patterned after a similar provision in another state's statute, "it is proper to resort to judicial constructions placed on the statute by the courts of the state whose statute provided the `model' in determining the proper construction...."); Flammer v. Patton, 245 So.2d 854, 858 (Fla.1971) ("We have long held that when our Legislature adopts a statute from another state, we should adopt that state's judicial construction of the statute.").
The Oregon Supreme Court has held "that `the major contributing cause' limitation found in ORS 656.005(7)(a)(B) [1990 (which is substantially identical to section 440.09(1), Florida Statutes (1995)) ] was meant to apply to employer-responsibility determinations." SAIF Corp. v. Drews, 318 Or. 1, 860 P.2d 254, 257 (1993) (In banc).
"Compensable injury" encompasses an application of the criteria found in ORS 656.005(7)(a), including the limitations found in subparagraphs (A) and (B) of that statute, in making an initial determination of compensability. If the accidental injury described in paragraph (a) combines with a preexisting condition, a determination is made under subparagraph (B) whether the accidental injury described in paragraph (a) is "the major contributing cause of the disability or need for treatment." That determination is made under subparagraph (B) whether or not the preexisting condition was compensable.

*1147 If the preexisting condition was compensable, then the provisions of ORS 656.308(1) apply to determine whether responsibility shifts to the subsequent employer. If the accidental injury described in ORS 656.005(7)(a) was found not to be "the major contributing cause" under subparagraph (B), then the first sentence of ORS 656.308(1) applies, because the claimant has not sustained a "new compensable injury involving the same condition" and, thus, the first employer remains responsible. If the accidental injury described in paragraph (a) of ORS 656.005(7) was found to be "the major contributing cause" under subparagraph (B), then the second sentence of ORS 656.308(1) applies, because a new compensable injury has occurred, and responsibility shifts to the subsequent employer. Thus, the provisions of both ORS 656.005(7)(a)(B) and 656.308(1) can be applied, giving effect to both provisions, while carrying out the intent of the legislature to shift the burden to a subsequent employer only if a new injury is "the major contributing cause" of the need for treatment.
We conclude that the legislature intended the "major contributing cause" requirement of ORS 656.005(7)(a)(B) to apply to the shifting of responsibility among employers under ORS 656.308(1), whether or not the earlier condition to which subparagraph (B) refers was compensable.
SAIF Corp., 860 P.2d at 258-59. Where "the major contributing cause" determines employer responsibility, neither apportionment nor contribution is necessary. See Barrett Bus. Servs. v. Morrow, 164 Or. App. 628, 993 P.2d 179, 182-83 (1999); Multifoods Specialty Distribution v. McAtee, 164 Or.App. 654, 993 P.2d 174, 176-77 (1999).

III.
The majority opinion assigns unwarranted significance to the Legislature's decision not to repeal section 440.42(3), Florida Statutes (1993), and misplaces reliance on cases decided under section 440.42(3) concerning accidents that occurred before January 1, 1994. Section 440.42(3), Florida Statutes (1995), provides:

When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the judge of compensation claims shall have jurisdiction to adjudicate such controversy; and if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the judge of compensation claims shall have jurisdiction to order such reimbursement; however, if the carrier finally determined liable can demonstrate that it has been prejudiced by lack of knowledge or notice of its potential liability, such reimbursement shall be only with respect to payments made after it had knowledge or notice of its potential liability.
(Emphasis supplied.) Absent "lack of knowledge or notice," which is not alleged here, this provision does not contain any even arguably substantive rule for allocating liability. In relying on cases decided before the "major contributing cause" provisions took effect, the majority opinion *1148 misapprehends the reach of section 440.42(3), and relies on superseded substantive law. Section 440.42(3) is a purely procedural provision.
Section 440.42(3) remains a necessary part of the Workers' Compensation Law, despite the changes that took effect on January 1, 1994. If, for example, the second employer in the present case had paid the benefits owed Mr. Guzman before the judge of compensation claims determined that the first employer was responsible, section 440.42(3) would have provided a procedure for the second employer to obtain reimbursement for (applying the "major contributing cause" provisions to employer responsibility) one hundred percent of the benefits the second employer had provided. One industrial accident might, moreover, result in injury that was the major contributing cause of a need for treatment even though an industrial accident in the course and scope of a prior employment had caused a different injury, perhaps to another part of the body, that remained the major contributing cause of the claimant's disability.

IV.
The original accident(s) in the course and scope of the first employment caused the injury that was the major contributing cause of Mr. Guzman's disability and need for treatment. Since he proved "that the [initial] work-related injury is the major contributing cause of his subsequent injury or aggravation," Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996), the judge of compensation claims properly ordered the first employer (and its insurance carrier) to pay him the benefits to which he is entitled under the Workers' Compensation Law.
Insofar as the court today rules that the first employer is less than fully responsible for benefits owing on account of injury sustained in the course and scope of employment that was the major contributing cause of Mr. Guzman's disability and need for treatment, I respectfully dissent. Injury attributable to the later, lighter work Mr. Guzman performed for a short period of time after the shop was sold (and another workers' compensation insurance carrier covered the risk) was not the major contributing cause either of his need for treatment or of his disability. I also respectfully dissent from today's ruling that the second employer is responsible even for a portion of the benefits. Otherwise, I join in the judgment.
NOTES
[1] This Court, in a footnote, has stated that apportionment is the correct term to use in dividing liability for permanent benefits. Forklifts of Central Fla. v. Beringer, 560 So.2d 1362, 1362 n. 1 (Fla. 1st DCA 1990). Contribution, or reimbursement, is the appropriate term when dividing responsibility under section 440.42(3). Id. However, many interchange the terms.