802 So.2d 1186 (2002)
HANDY-MAN/KNEP, INC., and Managedcomp, Inc., Appellants,
v.
Nicholas WEINSTEIN and Pacesetter Personnel Services, Inc., and RSKCO, Appellees.
No. 1D00-4221.
District Court of Appeal of Florida, First District.
January 4, 2002.
*1187 Nancy Blastic and Thomas A. Moore, of Moore, Peterson & Zeitler, P.A., Orlando, for Appellants.
James F. Kidd and David E. Ackley of Moran & Shams, Orlando, attorneys for Appellee Pacesetter Personnel/RSKCO.
David Rickey, Orlando, and Bill McCabe, Longwood, attorneys for Appellee Nicholas Weinstein.
BROWNING, J.
This is an appeal of the final order of the Judge of Compensation Claims (JCC).[1] E/C # 1, the appellants, contend that the JCC erred as a matter of law by finding Claimant's April 13, 1998, accident was the major contributing cause of his need for medical treatment and disability; by awarding attorney's fees and costs; and by refusing to apportion responsibility for benefits between E/C # 1 and E/C # 2 according to each one's liability. Claimant concedes that in light of B & L Services, Inc. v. Coach USA, 791 So.2d 1138 (Fla. 1st DCA 2001) (explaining that a determination of whether the first E/C were entitled to contribution from the second E/C required a determination of the actual extent to which each E/C contributed to the claimant's disability),[2] the JCC erred in *1188 failing to apportion. We agree that B & L Services compels a reversal in part. Accordingly, we affirm the final order in part, reverse in part, and remand with directions to the JCC to apply the apportionment procedure set forth in B & L Services.
While employed as a laborer for E/C # 1 on April 13, 1998, Claimant was involved in a motor vehicle accident while being transported in a company vehicle to a job site. Immediately following this accident, Claimant requested medical attention and was transported by ambulance to the emergency room, where he complained of severe neck pain. He returned to work for E/C # 1 several days later and continued to work there until April 28, 1998. Claimant presented to Dr. Alvarez, who restricted Claimant's work activities to modified-duty status and prescribed a course of physical therapy. Despite Claimant's continued complaints of pain, he was not authorized by E/C # 1 to receive additional treatment. E/C # 1 paid no indemnity benefits. On September 23, 1998, Claimant filed a petition for benefits seeking medical and indemnity benefits from E/C # 1. E/C # 1 did not file a notice of denial.
Claimant remained out of work until June 26, 1998, when he secured employment with E/C # 2. His neck pain gradually became more severe, and at no time did his complaints of neck pain from the April 1998 accident resolve. Beginning in December 1998, Claimant began experiencing radicular symptoms with increased frequency and severity. He worked for E/C # 2 sporadically through March 4, 1999, when he experienced increased pain in his neck, shoulder, and shoulder blade areas while carrying drywall with a co-worker. Claimant did not initially request or seek treatment, and he completed his shift on that date. Soon afterwards, he traveled to Texas with his parents and presented to Dr. Spann, a Texas physician who recommended an MRI, which demonstrated a herniated disc at the C6-7 level. Claimant returned to Florida, where he received treatment primarily with Dr. Keller, who performed an anterior cervical diskectomy on May 8, 1999, and provided postoperative care. On September 20, 1999, Dr. Keller opined that Claimant achieved maximum medical improvement with a 7 per cent permanent impairment rating.
Beginning in mid-July 1999, Claimant had filed petitions for benefits seeking medical and indemnity benefits from E/C # 2. E/C # 2 filed notices of denial from April through October 1999. On January 11, 2000, E/C # 2 filed a notice of controversy against E/C # 1 seeking reimbursement for all medical and indemnity benefits paid to date. Additionally, E/C # 2 rescinded the prior notices of denial on October 8, 1999, and commenced providing Claimant with medical and indemnity benefits pending determination of the controversy.
The JCC found that Claimant's accident on April 13, 1998, arose out of the course and scope of his employment with E/C # 1, and that his employment was the major contributing cause of that accident. This accident was found also to be the major contributing cause of Claimant's disability and need for medical treatment *1189 from that date forward. Thus, the first accident was compensable. Competent substantial evidence in the record supports this conclusion. Relying on expert medical testimony, the JCC found also that the first accident is responsible for 75 per cent of Claimant's disability and need for treatment. The second industrial accident, on March 4, 1999, was found responsible for 25 per cent of Claimant's disability and need for treatment.
The JCC determined that Claimant is entitled to receive TPD benefits from April 28, 1998, through June 26, 1998, with penalties and interest. The JCC held E/C # 1 responsible for payment of all benefits and full reimbursement to E/C # 2 for all medical and indemnity benefits the latter had paid to date. Because the first accident is the major contributing cause of the disability and need for treatment, the JCC awarded future orthopedic care by Dr. Keller to be provided by E/C # 1. E/C # 1's claim for apportionment pursuant to section 440.09(1)(b), Florida Statutes (1997), was denied based on the JCC's finding that the second accident is not the major contributing cause of the disability and need for treatment. E/C # 2 were found not responsible for providing any benefits. For the same reason, only E/C # 1 were made responsible for the payment of attorney's fees and costs secured through the date of the final order.
Given the facts set forth in the instant record and the initial findings of fact made by the JCC, the JCC erred in using a "major contributing cause" standard for determining whether E/C # 1 are entitled to contribution from E/C # 2. As occurred in B & L Services, "[t]he JCC appears to have confused the standard for determining compensability with the standard for determining responsibility." 791 So.2d at 1142. In that opinion, we stated that "the first step is determining whether the injury is compensable under the major contributing cause standard in section 440.09(1). The next step is determining liability between multiple employers/carriers under section 440.42(3)." Id. at 1143. Consistent with the first step in B & L Services, the JCC found record support for the conclusions that Claimant's first and second accidents are compensable, and that the first accident is the major contributing cause of his disability and need for treatment. Next, the JCC properly made a finding to what extent the two employers/carriers are each liable for the disability and need for treatment. Having made these findings, however, the JCC erred in failing to apportion the liability between E/C # 1 and E/C # 2 in the appropriate amounts. See id. On remand, the apportionment procedure should be applied to attorney's fees too. Id.
We affirm the finding that the first accident is the major contributing cause of Claimant's disability and need for treatment; affirm the findings as to the allocation of responsibility; and affirm the entitlement to TPD benefits from April 28, 1998, through June 26, 1998, medical and indemnity benefits, future orthopedic care, and attorney's fees and costs. We reverse the final order to the extent it does not provide for any contribution by E/C # 2 following the second accident. The case is remanded for further proceedings in accordance with B & L Services.
AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
PADOVANO and LEWIS, JJ., concur.
NOTES
[1] The order held Handy-Man/Knep, Inc. and Managed Comp, Inc., Employer/Carrier # 1 (E/C # 1), responsible for payment of all medical and indemnity benefits provided to Appellee Nicholas Weinstein (Claimant) by Pacesetter Personnel Service, Inc., and RSKCO, Employer/Carrier # 2 (E/C # 2); ordered E/C # 1 fully to reimburse E/C # 2 for all benefits provided to date; held E/C # 1 responsible for providing future orthopedic care; ordered E/C # 1 to pay temporary partial disability (TPD) benefits from April 28, 1998, through June 26, 1998, to Claimant, with penalties and interest; denied the claim for TPD benefits from June 27, 1998, through March 4, 1999; made E/C # 1 responsible for payment of attorney's fees and taxable costs for benefits secured on Claimant's behalf through the date of the order; and denied E/C # 1's claim for apportionment.
[2] As the JCC's final order was issued in September 2000 in the case at bar, and our decision in B & L Services was not issued until 2001, the JCC obviously did not have the benefit of the discussion of the apportionment procedure set forth in B & L Services.