951 So.2d 12 (2007)
Roy PEARSON, Appellant,
v.
PARADISE FORD and Comp Options Insurance; Budget Group, Inc. and CNA ClaimPlus, Appellees.
No. 1D05-0957.
District Court of Appeal of Florida, First District.
February 5, 2007.
Rehearing Denied March 16, 2007.
*13 Alfred J. Hilado, Orlando, and Bill McCabe, Longwood, for Appellant.
Jeffrey W. Golovin of Kelley, Kronenberg, Kelley, Gilmartin, Fichtel & Wander, P.A., West Palm Beach, and Clint M. Lavender, Orlando, for Appellees Paradise Ford and Comp Options Insurance.
James F. Kidd and C. Jason Grundorf of Moran & Shams, P.A., Orlando, for Appellees Budget Group, Inc. and CNA Claim-Plus.
VAN NORTWICK, J.
This workers' compensation appeal involves two employment accidents, the first in 1999 and the second in 2004, each of which resulted in an injury to the back of claimant, Roy Pearson, and both of which combined to cause his current need for compensation benefits. Based upon medical evidence, the Judge of Compensation Claims (JCC) determined that 80% of claimant's condition was related to the 1999 accident and 20% was related to the 2004 accident. The JCC ruled, however, that, since the 2004 accident was not greater than 50% responsible for claimant's condition, that accident was not compensable pursuant to the 2003 amendments to section 440.09(1)(b), Florida Statutes (2003), see Chapter 2003-412 § 6 at 3876, Laws of Florida, and that, therefore, the employer/carrier at risk for the 2004 accident, appellees Paradise Ford and Comp Options Insurance (Paradise Ford/Comp Options), could not be held responsible for any contribution to medical or indemnity benefits due the claimant. The JCC further determined that the employer/carrier at risk for the 1999 accident, appellees Budget Group and CNA ClaimPlus (Budget Group/CNA), were required to pay claimant 80% of the benefits due for the period May 3, 2004, through November 12, 2004. We affirm the JCC's allocation of responsibility between the two employer/carriers. Because we conclude that section 440.09(1)(b) does not apply here, we reverse the JCC's ruling that section 440.09(1)(b) absolves Paradise Ford/Comp *14 Options of any responsibility for claimant's workers' compensation benefits. Finally, we reverse the JCC's determination that benefits were due for the period ending November 12, 2004, rather than December 8, 2004, the date of the merits hearing in this case, because the evidence is uncontradicted that claimant followed the advice of his treating physician and was unaware that his non-work status was changed before the merits hearing. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
Claimant has worked as an automobile mechanic at a Ford dealership in Cocoa since 1988. He was employed by Budget Group on August 13, 1999, when he suffered a back injury lifting a wheel and tire. He was treated conservatively by his treating physician, Dr. Glenn, and returned to work. He continued to see Dr. Glenn for ongoing low back pain and right lower extremity pain. He was able to maintain his employment by taking anti-inflammatory medication and muscle relaxers. Although Dr. Glenn recommended a facet block, it was not performed.
In August 2002, the ownership of the dealership was transferred from Budget Group to Paradise Ford and the carrier at risk became Comp Options Insurance. On April 26, 2004, while working for Paradise Ford, claimant injured his back when he attempted to move a passenger seat. He felt immediate and sharp low back pain as well as numbness and tingling down both of his lower extremities. Paradise Ford/ Comp Options initially provided treatment, but then controverted claimant's accident on the ground that his condition was preexisting. Dr. Glenn put claimant in an off-work status and scheduled a facet block. Budget Group/CNA paid two of Dr. Glenn's bills, but did not authorize any medical treatment thereafter. The facet block was not performed. Neither employer/carrier paid claimant indemnity benefits.
Claimant requested and received an IME by Dr. Gregory Munson, an orthopedist, on October 11, 2004. Upon examination, Dr. Munson did not find any neurological deficits or any objective findings of radiculopathy or nerve root compression. Dr. Munson opined that claimant should be kept off work at least until a new MRI was obtained. The MRI was performed on November 12, 2004. Dr. Munson compared this MRI with two MRI studies which were done in October 2003, and opined that the new MRI did not show a worsening of claimant's prior back condition. While there was some indication that an October 31, 2003 MRI revealed a possible disk herniation, Dr. Munson reported that he did not see that condition on the 2004 MRI. He attributed 80% to 90% of claimant's current condition to his 1999 accident, and 10% to 20% to the 2004 accident. Dr. Glenn concurred that the major contributing cause of claimant's need for medical treatment after April 26, 2004 was the 1999 accident.
Claimant filed petitions against Budget Group/CNA and Paradise Ford/Comp Options. Budget Group/CNA controverted, contending that the 2004 accident was an intervening cause and major contributor to claimant's condition and that, therefore, Paradise Ford/Comp Options is responsible for the benefits due to the claimant. Paradise Ford/Comp Options also controverted, arguing that claimant's disability was due to his preexisting condition and not the 2004 accident. The merits hearing was held on December 8, 2004.
The JCC found that "for the 1999 industrial accident . . . the claimant carried his necessary burden of proof that he had an accident arising out of and in the course of [sic] scope of his employment." Further, *15 the JCC determined that temporary total disability (TTD) benefits should be paid only through November 12, 2004, the date of the MRI recommended by Dr. Munson, because there was no objective medical evidence which would entitle claimant to benefits thereafter. The JCC accepted Dr. Munson's opinion and, based on this opinion, found that 80% of claimant's condition was related to the 1999 accident and 20% was related to the 2004 accident. Based on this finding, he ruled that under the post-October 1, 2003 revisions to section 440.09(1)(b),[1] Paradise Ford/Comp Options was not liable for any TTD benefits for the 2004 accident because the 2004 accident was not more than 50% responsible for the claimant's need for treatment and benefits.
The JCC found that Budget Group/CNA was liable to pay claimant 80% of the TTD benefits for the period May 3, 2004 through November 12, 2004, and 80% of the claimant's medical treatment until claimant returned to his pre-April 26, 2004 condition. The JCC ruled that, since the 2004 accident was not compensable under section 440.09(1)(b), neither employer/carrier was responsible for 20% of the incurred TTD benefits or medical expenses. The JCC explained:
Although this Court finds that there is evidence that the April 26, 2004, accident contributed to the claimant's subsequent need for treatment and/or loss, the level of liability did not rise to a level required by the statute in order for [Paradise Ford/Comp Options] to be responsible for their "contributed effect."
On appeal, the claimant and Budget Group/CNA assert that the JCC's interpretation of section 440.09(1)(b), Florida Statutes (2003), is erroneous. They contend that section 440.09(1)(b), Florida Statutes (2003), should be read as applying only when a claimant's preexisting condition did not arise in the course of employment. Thus, since the claimant's injuries here were caused solely by multiple employment accidents, section 440.09(1)(b) should not be determinative.[2]
Paradise Ford/Comp Options argues that section 440.09(1)(b) applies to any preexisting condition or injury no matter the source. Thus, where a claimant's condition is caused by the effects of a combination of two or more industrial accidents, only the employer/carrier responsible for the accident which constitutes the major contributing cause of the claimant's injuries is required to provide compensation or benefits.
We agree that section 440.09(1)(b) does not apply here. Section *16 440.42(4), Florida Statutes (2003),[3] not section 440.09(1)(b), controls the case under review. We held in B & L Services, Inc. v. Coach USA, 791 So.2d 1138, 1142-43 (Fla. 1st DCA 2001), that section 440.42(3) [now section 440.42(4)] governs the division of liability between carriers when two or more compensable accidents combine to cause the claimant's need for benefits. See also Jeffrey's Steel v. Conibear Equip., 854 So.2d 268, 271 (Fla. 1st DCA 2003); and Handy-Man/Knep, Inc. v. Weinstein, 802 So.2d 1186, 1189 (Fla. 1st DCA 2002). In B & L Services, Inc., 791 So.2d at 1143, we explained:
As we conclude that the legislature did not intend to apply the major contributing cause standard to section 440.42(3), the JCC must evaluate any reimbursement or contribution claim under the preexisting standard. "The determinative factor in placing liability under Section 440.42(3) is whether the second compensable accident causes injury which is independent from or an exacerbation of the first compensable accident. Section 440.42(3) thereafter allows the deputy [JCC] to divide liability according to each carrier's responsibility." See U.S. Elec. Co. v. Sisk Elec. Service, Inc., 417 So.2d 738 (Fla. 1st DCA 1982). A causal connection must exist between the claimant's employment and second industrial injury in order to justify apportionment of liability among carriers. See Custom Architectural Metals v. Bradshaw, 623 So.2d 804, 806 (Fla. 1st DCA 1993).
Thus, here, the JCC erred in not dividing liability 80% to Budget Group/CNA and 20% to Paradise Ford/Comp Options in accordance with his findings of responsibility.
Our holding that section 440.09(1)(b) is not applicable to the instant case is supported by the manner in which the statute was amended in 2003. It is apparent that the amendments to subsection (1)(b) of section 440.09 were intended to overrule our decision in Closet Maid v. Sykes, 763 So.2d 377 (Fla. 1st DCA 2000)(en banc). In Closet Maid, we defined the term "the major contributing cause" in section 440.09(1)(b), Florida Statutes (Supp.1994), in the context of a case in which the claimant suffered an employment accident which combined with his preexisting condition of spinal stenosis to cause a need for lumbar laminectomy surgery and other compensation benefits. We held that under section 440.09(1)(b) "coverage is available if the workplace accident contributes more to the disability or need for treatment than any other single cause." Id. at 381. We also held that major contributing cause could be established by either medical or lay evidence. Id. at 382.
In the 2003 amendments to section 440.09(1)(b), the legislature rejected both the Closet Maid definition of major contributing cause and the use of lay evidence to establish causation. As a result, it *17 seems evident that the legislature intended (1)(b) to apply only when the claimant's need for treatment or benefits is caused by the impact of an employment accident combining with a preexisting injury or condition that is unrelated to an employment accident.
Further, we believe that the interpretation of the amended section 440.09(1)(b) argued by Paradise Ford/Comp Options would produce absurd results in cases involving a claimant with injuries caused solely by multiple employment injuries with different employers. If we read the statute to exclude responsibility of employer/carriers which do not contribute more than 50% to the claimant's need for compensation benefits, then by definition at most only one employer/carrier will have any responsibility for benefits in such cases. In addition, in circumstances where, for example, three employment accidents combine to cause all of the claimant's need for compensation benefits, with each accident causing one-third of claimant's injuries, since no employer/carrier would be more than 50% responsible for claimant's injuries, no employer/carrier would be obligated to provide treatment or benefits, and no treatment or benefits would be provided the claimant. We cannot believe the legislature would intend such a result. Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993)("a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion.")(quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)).
Finally, the JCC did not award any benefits to claimant after the date of his MRI on November 12, 2004, because the MRI did not provide objective medical evidence that claimant's condition had worsened as a result of the 2004 accident. Claimant had been placed in an off-work status by his treating physician, Dr. Glenn, in October 2004, however, and was never returned to work by Dr. Glenn or the employer/carrier. Further, the JCC expressly found that this no-work status "was the only one the claimant was aware of through the date of the merits hearing."
We have consistently held in workers' compensation cases "that even in the absence of medical evidence" of a claimant's disability, a claimant is nonetheless entitled to benefits if he has not been advised to return to work. Garcia-Vina v. U.S. Holiday Health and Recreation, 634 So.2d 200, 201 (Fla. 1st DCA 1994); Amburgey v. Palm Beach County School Bd., 712 So.2d 426, 427 (Fla. 1st DCA 1998). While Dr. Munson did opine in his letter of December 4, 2004, that claimant could work light duty, there is no proof that this letter was received in time for claimant's attorney to relay the information to claimant before the merits hearing was held four days later on December 8. Because the JCC found that claimant was not aware he was to return to work before the date of the merits hearing, there is no support for the JCC's determination not to award benefits through the date of that hearing. The rule of Amburgey has continued to be applied to post-2003 accidents. See Seminole County School Bd. v. Tweedie, 922 So.2d 1011, 1013 (Fla. 1st DCA 2006). Accordingly, we reverse the JCC's ruling that benefits were due through November 12, 2004, rather than December 8, 2004.
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
ALLEN, J., concurs, and BENTON, J., concurs in part and dissents in part with written opinion.
BENTON, J., concurring in part and dissenting in part.
I share the majority's view that Roy Pearson is entitled to full temporary total *18 disability and medical benefits, not merely eighty per cent of what the Workers' Compensation Act prescribes. Medical evidence demonstrated, and the judge of compensation claims found, that "80% of claimant's condition was related to the 1999 accident," ante p. 15, and that the 1999 "injury arising out of and in the course of employment is and remains" more than fifty per cent responsible for the injury as compared to all other causes combined "and [still] remains the major contributing cause of the disability." § 440.09(1)(b), Fla. Stat. (1999).
Under the Act in force at the time of the 1999 accident, therefore, the 1999 (first) employer and its insurance carrier are responsible for payment of these benefits. See § 440.15(5)(a), Fla. Stat. (1999) ("Compensation for temporary disability, medical benefits, and wage-loss benefits shall not be subject to apportionment."). See also B & L Servs., Inc. v. Coach USA, 791 So.2d 1138, 1148 (Fla. 1st DCA 2001) (Benton, J., dissenting) ("Since he proved `that the [initial] work-related injury is the major contributing cause of his subsequent injury or aggravation,' Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996), the judge of compensation claims properly ordered the first employer (and its insurance carrier) to pay him the benefits to which he is entitled under the Workers' Compensation Law.") (alteration in original).
Accordingly, I would affirm the determination below that the 2004 (second) employer and its insurance carrier are not responsible for compensation benefits on account of a condition only "20% . . . related to the 2004 accident." Ante p. 13. With respect, I believe this is what the Legislature intended in enacting, then in amending, section 440.09(1)(b). See Closet Maid v. Sykes, 763 So.2d 377, 381 (Fla. 1st DCA 2000) ("It is thus no longer enough for an injured worker to show that a workplace accident is causally related [to] a particular injury, as in Reynolds v. Whitney Tank Lines, 279 So.2d 293 (Fla.1973), or that the accident contributed to the need for treatment. Coverage is available under the statute only if the workplace accident `is and remains the major contributing cause of the disability or need for treatment.'").
The statute draws no distinction between a "preexisting disease or condition" attributable to work in the same or another industry and a "preexisting disease or condition" with a nonindustrial etiology. The majority opinion's discussion of this point is not, moreover, necessary to today's decision.
NOTES
[1] Section 440.09(1)(b), Florida Statutes (2003) was amended by the 2003 Legislature in the following manner:

(b) If any injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to all other causes combined and thereafter remains the major contributing cause of the disability or need for treatment. Major contributing cause must be demonstrated by medical evidence only.
Ch. 2003-412 § 6 at 3876, Laws of Fla.
[2] The claimant also argues that, notwithstanding section 440.09(1), Florida Statutes (2003), under sections 440.02(1) and 440.15(5)(a), Florida Statutes (2003), where a claimant has a preexisting condition, whether from a prior compensable accident or an idiopathic condition, the claimant has sustained a compensable accident if the accident has aggravated the preexisting condition. Under the facts of the instant case, we are not required to reach this issue.
[3] Section 440.42(4) provides:

When there is any controversy as to which of two or more carriers is liable for the discharge of the obligations and duties of one or more employers with respect to a claim for compensation, remedial treatment, or other benefits under this chapter, the judge of compensation claims shall have jurisdiction to adjudicate such controversy; and if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the judge of compensation claims shall have jurisdiction to order such reimbursement; . . .