PER CURIAM.
 

 In this appeal and cross-appeal, the parties challenge an order of the Judge of Compensation Claims (JCC) finding a partial rupture to Claimant’s right breast implant compensable (cross-appeal), and apportioning out 75% of the cost of repairing the rupture due to the aged condition of the implant (appeal). We affirm the JCC’s finding as to compensability, and reverse her application of the apportionment statute.
 

 Background
 

 It is uncontested that Claimant suffered a compensable accident which, among other injuries, resulted in a partial rupture of her right saline breast implant. The E/C refused to authorize a plastic surgeon, asserting the damage to the implant was not compensable. The E/C retained a plastic surgeon independent medical examiner (IME). The IME testified the partial rupture of Claimant’s implant was caused 25% by the accident and 75% by the aged or defective condition of the implant. The IME also testified authorization of a plastic surgeon was reasonable and medically necessary to repair the rupture.
 

 In the order on appeal, the JCC found the workplace accident was the major contributing cause of the partial rupture of a prosthetic device pursuant to section 440.02(19), Florida Statutes (2006), and, relying on the IME’s opinion as to causation, apportioned out 75% of benefits related to treatment for the implant pursuant to section 440.15(5)(b), Florida Statutes (2006).
 

 Compensability of Damage to Prosthetic Device
 

 The definition of a compensable “injury” includes damage to dentures, eyeglasses, prosthetic devices, and artificial limbs when such damage is shown to result from a compensable accident.
 
 See
 
 § 440.02(19), Fla. Stat. Thus, if damage to dentures, eyeglasses, prosthetic devices, or artificial limbs occurs in conjunction with,
 
 *37
 
 and as the result of, a workplace accident, the statute indicates that the damage (“injury”) arose out of employment, and was caused in major part by work performed within the course of employment.
 
 [1]
 
 The plain language of the statute further indicates no additional proof is necessary as to the major contributing cause of the damage.
 
 [2]
 

 A “prosthetic device” refers to an artificial substitute or replacement, whether external or implanted, for a missing or defective natural part of the body, and requires a relatively permanent functional or cosmetic purpose.
 
 Cash v. Univ. Rivet,
 
 616 So.2d 446, 448 (Fla.1993) (interpreting a now-repealed provision of the statute which tolled the statute of limitations for treatment relating to prosthetics administered to treat the workplace injury). The determination as to whether an artificial device is a prosthesis is an issue for the trier of fact, and findings on this issue will not be disturbed on appeal unless clearly erroneous.
 
 See Roe v. City Invest/Gen. Dev. Carp.,
 
 587 So.2d 1323, 1325 (Fla.1991) (McDonald, J., special concurrence).
 

 Here, the E/C’s IME testified Claimant’s breast implants are prosthetic devices. The JCC relied on this testimony, and the definition provided by the Supreme Court in
 
 Cash,
 
 in finding Claimant’s damaged implant is a prosthetic device. The E/C urges the JCC’s finding constitutes error as a matter of law, because Claimant’s implants were for cosmetic purposes and not to replace or substitute a missing or defective body part. However, the definition of prosthetics used in
 
 Cash
 
 includes prosthetic devices which serve only a cosmetic purpose.
 
 [3]
 
 Additionally, this court has referred to breast implants as
 
 prostheses. See 3-M Carp.
 
 —McGhan
 
 Med. Reports Div. v. Brown,
 
 475 So.2d 994, 996 (Fla. 1st DCA 1985). The JCC’s finding that Claimant’s breast implant is a prosthetic device is supported by competent, substantial evidence, and is not clearly erroneous.
 

 Apportionment/ Depreciation of Prosthetic Device
 

 A plain reading of the apportionment provisions of sections 440.15(5)(a), (b), Florida Statutes (2006), entitled “Subsequent Injury,” suggests apportionment is appropriate only when a
 
 claimant
 
 has suffered a prior injury or has a diagnosed medical condition which is preexisting. Here,
 
 Claimant
 
 is not alleged to have a preexisting disease, anomaly, or medical diagnosis; rather, it is her prosthetic breast implants that are alleged to have the preexisting condition of being aged.
 

 Section 440.15(5)(b) is applicable only when a claimant’s injury is the result of an
 
 *38
 
 acceleration or aggravation of a “preexisting condition.” Although the term “preexisting condition” is not specifically defined in the statute, the courts, relative to issues of apportionment, have only applied the term in the context of a medical diagnosis or disease, and never to a
 
 condition
 
 as that term is used to describe a state of fitness or a general state of being.
 
 See Evans v. Fla. Indus. Comm’n,
 
 196 So.2d 748 (Fla.1967).
 

 Based on the plain language of sections 440.15(5)(a), (b), Florida Statutes, and the courts’ historical allowance for apportionment only in the instance of aggravation or acceleration of a preexisting disease or medical diagnosis, we hold the apportionment provisions of the statute do not operate to apportion out that percentage of medical treatment attributable to the degradation of an artificial device.
 
 [4]
 
 For the foregoing reasons, we affirm that portion of the JCC’s order finding the damage to Claimant’s right breast implant compensable, and reverse that portion of the order apportioning out 75% of medical costs associated with repairing the rupture.
 

 AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
 

 HAWKES, C.J., KAHN and BROWNING, JJ, concur.
 

 [1]
 

 . This interpretation is supported by the most common example that could arise under section 440.02(19). If a claimant who wears eyeglasses is hit by an outside agent and his eyeglasses become dislodged and break, replacement would be required on a finding that such damage was caused by the accident, and not based on a battle of medical experts testifying as to the major contributing cause of the breakage. Neither the statute in question, nor the general intent of the Legislature stated in section 440.015, would be served by requiring a claimant to employ the services of an expert to engage in forensic failure analysis of the glasses, simply to have them replaced.
 

 [2]
 

 . However, it is clear from the statute that the damage to the prosthetic device cannot, itself, serve as the basis for establishing an accident or ''injury.” Rather, there must be an otherwise compensable accident, and the breakage must occur in conjunction with, and as the result of, the accident.
 

 [3]
 

 . We find it unimaginable that the Legislature, by including "prosthetic devices” in section 440.02(19), intended carriers or JCCs to hold an unregulated, retrospective beauty contest to determine if a claimant's use of such devices was warranted.
 

 [4]
 

 . It should also be noted that in those circumstances where an individual has suffered damage to eyeglasses, dentures, or an artificial limb as a result of an accident, the
 
 medical
 
 necessity of such devices will always be due to a preexisting condition, i.e., the medical reason he needs glasses is poor vision which predates the date of accident. Failure to recognize section 440.02(19), Florida Statutes, as a unique statutory provision concerned with repair of damage to personal property, would defeat the very purpose of the statute because nearly every proper claim for repair or replacement would be subject to 100% apportionment (apportionment of medical benefits is based on the percentage of the need for such care attributable to the preexisting condition).