PER CURIAM.
In this workers’ compensation appeal, the Employer/Carrier (E/C) seeks review of a final order awarding indemnity and medical benefits to Claimant for injuries to his low back arising out of a November 2008 workplace accident. The E/C argues on appeal that 1) no competent substantial evidence supports the award of temporary partial disability (TPD) benefits, and 2) the Judge of Compensation Claims (JCC) erred in failing to apportion the indemnity and medical benefits awarded to Claimant, as required by section 440.15(5)(b), Florida Statutes (2008). We affirm the first issue without further discussion, and we affirm the second issue for the reasons that follow.

Background

Claimant worked for the E/C transporting and delivering doors to retail stores throughout Florida. On November 7, 2008, Claimant injured his low back while carrying a door on his shoulders. The E/C provided initial treatment for Claimant’s injury, but subsequently denied compensa-bility of the entire claim on the basis that Claimant’s back condition was unrelated to his workplace accident.
Claimant, who has worked for various employers transporting and delivering heavy materials, suffered several back injuries prior to the November 2008 workplace accident, only some of which were work-related. Specifically, Claimant experienced muscle sprains in his neck and back in 1994 and 1996 while transporting and delivering heavy materials for employers other than the one involved in this *794 case. Additionally, Claimant injured his back and shoulder in non-occupational slip- and-fall incidents in 1995 and 2008. Finally, in 2006, while working for a different employer, Claimant injured his low back while lifting heavy equipment. Claimant received medication and physical therapy for this injury and was off work for a period of time. After Claimant recovered from the 2006 back injury, he began working for the employer involved in this case. Claimant maintains he was able to work full-duty and pain free for three to four months before the November 2008 accident occurred.
Following the November 2008 accident, Claimant filed a petition for benefits seeking authorization of medical care and treatment for his low-back, temporary total disability (TTD) benefits from November 10, 2008, through July 22, 2009, and TPD benefits beginning July 22, 2009, through the date of the final hearing. The E/C filed a response to Claimant’s petition denying the claim in its entirety and alleging Claimant suffered a preexisting idiopathic condition unrelated to work.
Dr. Davis, the expert medical advisor in this case, reviewed Claimant’s medical records and evaluated Claimant on July 22, 2009. After reviewing a 2006 MRI of Claimant’s back, taken after Claimant’s 2006 workplace accident, Dr. Davis opined that Claimant suffered from L4-5 disc bulging and spondylolisthesis before the November 2008 accident. Dr. Davis further opined that Claimant’s disc protrusion was now more prominent and the November 2008 accident permanently aggravated Claimant’s preexisting spondylolisthesis. Noting that Claimant was relatively asymptomatic before the 2008 accident, Dr. Davis testified the 2008 work injury was the major contributing cause of Claimant’s disability and need for treatment. When asked to apportion the cause of Claimant’s condition between his various back injuries, Dr. Davis testified that 40% of Claimant’s disability and need for treatment is due to Claimant’s anatomic pathology that preexisted the 2008 injury and 60% of Claimant’s disability and need for treatment is due to the November 2008 work accident. Dr. Davis further estimated that 75% of Claimant’s need for back surgery was due to Claimant’s November 2008 injury and that 25% was due to Claimant’s preexisting condition.
After conducting a final hearing on Claimant’s petition for benefits, the JCC issued a final order granting Claimant’s request for medical treatment and indemnity benefits. Accepting and relying on the opinions of the expert medical advisor, Dr. Davis, the JCC found that Claimant suffered a permanent aggravation of his preexisting lumbar condition in the November 2008 accident and that the accident is the major contributing cause of Claimant’s disability and need for medical treatment. The JCC rejected the E/C’s apportionment defense, finding no evidence of a permanent impairment or disability attributable to this accident and no evidence of an anatomical impairment rating attributable to Claimant’s preexisting condition.
On appeal, the E/C argues that Dr. Davis’s testimony was sufficient to warrant apportionment of Claimant’s medical and TPD benefits and that the JCC erred in requiring evidence of a permanent impairment or disability attributable to Claimant’s preexisting condition. In response, Claimant argues that apportionment is appropriate only after a claimant reaches maximum medical improvement (MMI) and that the JCC correctly interpreted section 440.15(5)(b) to require proof of a permanent condition caused by the workplace accident. We affirm the JCC’s denial of the E/C’s apportionment defense, but *795 do so for reasons different from those provided by the JCC. See, e.g., D.R. Horton, Inc.-Jacksonville v. Peyton, 959 So.2d 390, 397-98 (Fla. 1st DCA 2007) (holding under the tipsy coachman rule, when the trial court reaches the right result, but for the wrong reasons, that decision will be upheld on appeal if there is any basis which would support the judgment in the record).

Analysis

For accidents occurring prior to October 1, 2003, apportionment of temporary disability benefits and medical benefits was specifically prohibited. Section 440.15(5)(a), Florida Statutes (2002), provided, in relevant part, that “[cjompensation for temporary disability benefits, medical benefits, and wage-loss benefits shall not be subject to apportionment.” Accord Russell House Movers, Inc. v. Nolin, 210 So.2d 859, 862-63 (Fla.1968) (holding that “compensation for temporary disability and medical benefits are not apportionable under the general scheme and intent of our workmen’s compensation law”) (emphasis in original).
In 2003, the Legislature amended section 440.15(5), Florida Statutes. See Ch. 2003-412, § 18, Laws of Fla. Significantly, the Legislature removed the express prohibition on the apportionment of temporary benefits, medical benefits, and wage loss benefits. The statute now provides, in relevant part:
If a compensable injury, disability, or need for medical care, or any portion thereof is a result of aggravation or acceleration of a preexisting condition, or is the result of merger with a preexisting condition, only the disabilities and medical treatment associated with such compensable injury shall be payable under this chapter, excluding the degree of disability or medical conditions existing at the time of the impairment rating or at the time of the accident, regardless of whether the preexisting condition was disabling at the time of the accident or at the time of the impairment rating and without considering whether the preexisting condition would be disabling without the compensable accident. The degree of permanent impairment or disability attributable to the accident or injury shall be compensated in accordance with this section, apportioning out the preexisting condition based on the anatomical impairment rating attributable to the preexisting condition. Medical benefits shall be paid apportioning out the percentage of the need for such care attributable to the preexisting condition ....
§ 440.15(5)(b), Fla. Stat. (2008). Notwithstanding this amendment, Claimant argues the Legislature did not intend to eliminate the long-standing principle that medical benefits and temporary indemnity benefits are not apportionable before a claimant reaches MMI. We disagree.
The Legislature’s removal of the express prohibition on the apportionment of medical and temporary disability benefits reflects the legislative intent to apportion all benefits, both before and after a claimant’s attainment of MMI. See Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639 (Fla. 1st DCA 1996) (“When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear.”). The revised statute unambiguously provides that “only the disabilities and medical treatment associated with a compensable injury shall be payable,” and it makes no exception for benefits provided before the attainment of MMI. Consequently, we find section 440.15(5)(b) now allows for the apportionment of all indemnity benefits, both tempo *796 rary and permanent, and all medical benefits, both before and after MMI. See, e.g., Greenberg v. Cardiology Surgical Ass’n, 855 So.2d 234 (Fla. 1st DCA 2003) (quoting State v. Goode, 830 So.2d 817, 825 (Fla.2002)) (“[T]he Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.”).
In light of the clear and unambiguous statutory language allowing for the apportionment of all indemnity and medical benefits, we reject Claimant’s contention that policy considerations concerning the harmful consequences that may stem from the apportionment of medical and temporary indemnity benefits should control the outcome of this case. These policy arguments should be directed to the Legislature, not this court.
In this case, the JCC denied the E/C’s apportionment defense on the basis that the E/C failed to present evidence of a permanent impairment or disability attributable to this accident or an anatomical impairment rating attributable to Claimant’s preexisting condition. In reaching this determination, the JCC apparently relied solely on the second sentence of section 440.15(5)(b), which states that “[t]he degree of permanent impairment or disability attributable to the accident or injury shall be compensated ... [by] apportioning out the preexisting condition based on the anatomical impairment rating attributable to the preexisting condition.” Because this language governs the apportionment of only permanent indemnity benefits, this was not a proper basis upon which to deny apportionment of Claimant’s medical or temporary indemnity benefits. Thus, the JCC erred to the extent she relied on this sentence of the statute in refusing to apportion Claimant’s benefits.
The apportionment of temporary indemnity benefits, permanent indemnity benefits, and medical benefits is governed by distinct clauses contained within section 440.15(5)(b). Specifically, the first sentence of section 440.15(5)(b) addresses apportionment of temporary indemnity benefits, in the clause indicating that “only the disabilities ... associated with [the] compensable injury shall be payable under this chapter, excluding the degree of disability ... existing at the time of the ... accident.” The second sentence of section 440.15(5)(b) addresses apportionment of permanent indemnity benefits, and requires evidence of a “permanent impairment or disability attributable to the accident or injury” and an “anatomical impairment rating attributable to the preexisting condition.” Finally, the third sentence of section 440.15(5)(b) addresses medical benefits and provides for payment “by apportioning out the percentage of the need for such care attributable to the preexisting condition.”
Because the E/C sought to apportion Claimant’s medical benefits and temporary indemnity benefits, as opposed to permanent indemnity benefits, it was not required to present evidence of a permanent impairment or disability attributable to the November 2008 accident.* Notwithstanding the JCC’s error, we affirm the JCC’s ultimate determination that the E/C failed to present sufficient evidence entitling it to apportionment.
*797 “Section 440.15(5)(b) is applicable only when a claimant’s injury is the result of an acceleration or aggravation of a ‘preexisting condition.’ ” Mullins v. 7-Eleven, Inc., 5 So.3d 35, 37 (Fla. 1st DCA 2009). As we noted in Mullins, the term “preexisting condition” is not specifically defined in the apportionment statute. Id. at 38. The phrase has been defined, however, and later applied in the context of the “major contributing cause” provision of section 440.09(1)(b), Florida Statutes. See Pearson v. Paradise Ford, 951 So.2d 12 (Fla. 1st DCA 2007); Pizza Hut v. Proctor, 955 So.2d 637 (Fla. 1st DCA 2007).
In Pearson, this court defined “preexisting condition,” for purposes of section 440.09(1)(b), to mean “a preexisting injury or condition that is unrelated to an employment accident.” 951 So.2d at 17. This definition was subsequently adopted and applied in Proctor, wherein the court held that “section 440.09(1)(b) applies when a claimant’s need for treatment or benefits is caused by the impact of an industrial accident combining with a preexisting injury or condition which is unrelated to an industrial accident.” 955 So.2d at 637. These decisions recognize that an underlying purpose of the Workers’ Compensation Law is to place on industry the burden of paying for all injuries and damages of occupational cause. Thus, pursuant to Pearson and Proctor, rather than claiming non-compensability in cases such as this, an E/C may instead find a remedy in section 440.42(4), Florida Statutes, which governs the division of liability between employers where, as here, two or more workplace injuries combine to cause the claimant’s need for benefits.
The policy reasons underlying Pearson and Proctor are equally applicable in the apportionment context. Thus, we see no reason why the definition of “preexisting condition” adopted in those cases should not also apply to section 440.15(5)(b). Accordingly, to avail itself of the apportionment defense under section 440.15(5)(b), the E/C must present evidence of the extent of the Claimant’s preexisting condition resulting from nonoccupational causes.
In this case, the E/C failed to present evidence of the extent of Claimant’s preexisting condition resulting from nonindustrial causes. To the contrary, Dr. Davis testified that Claimant’s preexisting condition was caused, in large part, by Claimant’s 2006 workplace accident. As acknowledged by counsel for the E/C at oral argument, Dr. Davis made no effort to apportion Claimant’s disability and need for medical care between his prior industrial injuries and non-industrial causes. Thus, the JCC properly denied the E/C’s apportionment defense.
For these reasons, the JCC’s order is AFFIRMED.
WETHERELL and MARSTILLER, JJ., concur; WEBSTER, J., concurs with opinion.

 Because temporary indemnity benefits are payable only if overall MMI has not been reached, and because permanent impairments and disabilities are not established before the attainment of MMI, the apportionment of temporary indemnity benefits cannot be conditioned on the existence of a permanent impairment. See §§ 440.15(2)(a), (4)(a), Fla. Stat (2008).