78 So.3d 108 (2012)
Casey NEWICK, Appellant,
v.
WEBSTER TRAINING CENTER and Zenith Insurance Company, Appellees.
No. 1D11-2091.
District Court of Appeal of Florida, First District.
January 30, 2012.
Barbara L. Richard of Daniel L. Hightower, P.A., Ocala, for Appellant.
William H. Rogner of Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., Winter Park, for Appellees.
DAVIS, J.
Claimant, Casey Newick, appeals a Final Compensation Order in which the judge of compensation claims ("JCC") concluded that the employer/carrier ("E/C") was entitled to avail itself of the apportionment defense provided for in section 440.15(5)(b), Florida Statutes. Claimant contends that the JCC erred as a matter of law in apportioning the benefits because Claimant's preexisting condition resulted from occupational injuries. Because the prior occupational injuries were not deemed compensable due to the actions of Claimant, we reject this argument and affirm the JCC's order.
As found by the JCC, Claimant had three shoulder dislocations prior to the compensable April 2, 2010, work accident. These dislocations occurred while she was performing work for her own business or through her employment with someone else. Claimant did not report any of the three prior dislocations as workers' compensation *109 injuries and did not file workers' compensation claims for any of them. Instead, she either paid out of pocket for treatment or used her own health insurance. The expert medical advisor opined that Claimant's current need for surgery was sixty-five percent related to the 2010 work accident and thirty-five percent related to the three prior dislocations.
In apportioning the benefits, the JCC cited to our opinion in Staffmark v. Merrell, 43 So.3d 792 (Fla. 1st DCA 2010), and concluded that the E/C was entitled to avail itself of the apportionment defense provided for in section 440.15(5)(b) because, although Claimant's prior injuries occurred in an occupational setting, they were never claimed or treated as compensable injuries under the workers' compensation system. The JCC reasoned that, because the prior injuries were not compensable, industry was not required to bear the full costs of any condition Claimant now has that resulted from those injuries. She permitted the E/C to apportion out thirty-five percent of the indemnity benefits to which Claimant was entitled and thirty-five percent of the cost of Claimant's recommended surgery. This appeal followed.
Pursuant to section 440.15(5)(b), Florida Statutes (2009), "If a compensable injury, disability, or need for medical care, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition. . . only the disabilities and medical treatment associated with such compensable injury shall be payable under this chapter. . . ." In Staffmark, the case upon which Claimant relies in support of her argument for reversal, the E/C argued in part that the JCC erred in failing to apportion the indemnity and medical benefits awarded to the claimant as required by section 440.15(5)(b). 43 So.3d at 793. In affirming, we noted that while the term "preexisting condition" was not specifically defined in section 440.15(5)(b), we had defined and later applied the term in the context of the major contributing cause provision in section 440.09(1)(b), Florida Statutes.[1]Id. at 797.
In Pearson v. Paradise Ford, 951 So.2d 12, 13 (Fla. 1st DCA 2007), which we relied upon in Staffmark, we explained that the claimant was involved in two employment accidents, each of which resulted in an injury to the claimant's back and both of which combined to cause his then-current need for compensation benefits. On appeal, the claimant argued that section 440.09(1)(b) did not apply because his injuries were caused solely by multiple employment accidents. 951 So.2d at 15. We agreed and determined that section 440.42(4), Florida Statutes, which "governs the division of liability between carriers when two or more compensable accidents combine to cause the claimant's need for benefits," controlled the case. Id. at 16. We determined that section 440.09(1)(b) was intended to apply only when a claimant's need for treatment or benefits was caused by the impact of an employment accident combined with a preexisting injury or condition that was unrelated to an employment accident. Id. at 17; see also Pizza Hut v. Proctor, 955 So.2d 637, 638 (Fla. 1st DCA 2007) (holding that the E/C could not rely upon section 440.09(1)(b) because the case involved two industrial *110 accidents and injuries without any preexisting injury attributable to a nonindustrial cause).
We noted in Staffmark that both Pearson and Proctor recognized that an underlying purpose of the Workers' Compensation Law is to place on industry the burden of paying for all injuries and damages of occupational cause. 43 So.3d at 797. We further noted that, pursuant to our two previous opinions, rather than claiming non-compensability in a case as that presented in Staffmark, an E/C may instead find a remedy in section 440.42(4). Id. We found the policy reasons underlying Pearson and Proctor to be equally applicable in the apportionment context under section 440.15(5)(b), and we held that an E/C, in order to avail itself of the apportionment defense, must present evidence of the extent of a claimant's preexisting condition resulting from non-occupational causes. Id. We affirmed the JCC's order, which rejected the E/C's apportionment defense because the E/C failed to present evidence of the extent of the claimant's preexisting condition resulting from non-industrial causes. Id.
Claimant's sole argument on appeal is that the JCC erred in apportioning benefits because, pursuant to Staffmark, an E/C is unable to avail itself of the apportionment defense if a claimant's preexisting condition resulted from any accident occurring at work, whether or not the resulting injury was deemed compensable. We disagree with this contention for several reasons. First, we were not confronted in Staffmark with a claimant who chose not to seek workers' compensation benefits for her previous injuries. Nor were we confronted with such a situation in Pearson or Proctor. There was no issue in any of those cases as to whether the previous injuries had been deemed compensable.
Moreover, Claimant's interpretation of Staffmark would render meaningless our determination that an E/C may find a remedy in section 440.42(4). As we noted in Pearson, that statute governs the liability between carriers "when two or more compensable accidents" combine to cause the claimant's need for benefits. 951 So.2d at 16 (emphasis added). By contemplating a remedy for an E/C under that statute, we recognized that compensability of the previous injury was necessary. Under Claimant's interpretation, the E/C in this case would have no remedy pursuant to section 440.42(4) because Claimant did not seek benefits through the workers' compensation system for her previous injuries.
In addition, although Claimant relies upon our mention in Staffmark that an underlying purpose of the Workers' Compensation Law is to place on industry the burden of paying for all injuries and damages of occupational cause, that underlying purpose does not mandate that an E/C be required to pay for injuries that were not deemed compensable at the pertinent time because of the actions of Claimant. As the JCC correctly set forth, the law requires industry to bear the burden of paying for only those injuries that were sustained in compensable workplace accidents. See § 440.09(1), Fla. Stat. (2009) ("The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment.") (Emphasis added). Were we to accept Claimant's interpretation of Staffmark, the E/C would be forced to provide benefits and medical care for injuries that, while occurring at Claimant's former workplaces, were never deemed compensable solely because Claimant elected not to seek workers' compensation benefits. Such a holding would contravene the pertinent statutes.
*111 For these reasons, the JCC did not err in allowing the E/C to apportion Claimant's benefits. We, therefore, AFFIRM the order on appeal.
VAN NORTWICK, J., concurs; THOMAS, J., concurs in result only with opinion.
THOMAS, J., concurring in result only.
I concur with the majority opinion, but only because we are bound by prior decisions which, in my view, were incorrectly decided. This court's prior decisions in Staffmark v. Merrell, 43 So.3d 792 (Fla. 1st DCA 2010), and Pearson v. Paradise Ford, 951 So.2d 12 (Fla. 1st DCA 2007), incorrectly interpreted section 440.15(5)(b), Florida Statutes, regarding apportionment. These decisions establish an irrational rule, not grounded in statute, that an E/C cannot apportion a preexisting condition that was incurred in an industrial context.
Our prior decisions have mistakenly applied the definition of a preexisting condition in the context of allocating benefits and applied it to the apportionment context. Here, for example, if Claimant had in fact received workers' compensation benefits for her previous industrial accidents, our rule would preclude E/C from obtaining apportionment, even where it is undisputed that the previous industrial accidents resulted in a preexisting condition. By conflating section 440.15(5)(b) with section 440.42(4), Florida Statutes, our court has confused the concept of apportionment, which only involves an employer and a claimant, with allocation of benefits, which involves multiple employers disputing their share of liability.
Thus, while I concur in the result here, I think this court should reconsider its prior decisions and correctly differentiate between apportionment of costs between an employer and a claimant, and the allocation of benefits between multiple employers and a claimant.
NOTES
[1] Section 440.09(1)(b) provides in part that "[i]f an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to all other causes. . . ."